SOUTHERN RAILWAY COMPANY *v.* JOHN R. LANNING.

1. RAILROADS.   *Flag stations.   Failure to stop when flagged.   When not liable.*

   A railroad company is not liable to one intending to become a passenger for a failure to stop a passenger train at a flag station, where the engineer and fireman in charge of the locomotive, through no fault of their own, and while in the exercise of due care on their part, failed to see and obey the signal on account of the manner in which it was given, or by reason of prevailing atmospheric conditions.

2. SAME.   *When liable.   Damages.*

   For not stopping a passenger train, when duly flagged by intending passengers, at a flag station, a railroad company is liable:
   (*a*) For compensatory damages, where its employes failed to see the signal through negligence on their part, when by the exercise of ordinary care they could have seen it; and
   (*b*) For compensatory damages, and punitive damages, if the jury see proper to award the latter, where the signal was seen and understood by the employes in charge of the locomotive and their actions in not stopping the train was malicious, wanton or capricious.

3. SAME.   *Instruction.   Must be predicated of evidence.*

   Where the testimony left it uncertain as to whether the engineer of a train saw a signal to stop at a flag station, and there was no proof that other employes saw the signal, an instruction that, if the engineer or other employes saw the signal to stop, and their failure to stop the train was either willful or capricious, punitive damages might be imposed, was erroneous, since there was no evidence of which to predicate it touching "other employes," and it omits all reference to the engineer understanding the signal.

4. SAME.   *Signal must be understood.*

   An instruction that, if the engineer of a train saw a signal to stop at a flag station, and the failure to stop was either willful or capricious on his part, punitive damages might be imposed, was erroneous for failing to state that the engineer understood the signal.

83 Miss.—11

5. Same.  *Instruction should specify facts.*

    An instruction, in an action against a railroad company for failing to stop a train at a flag station, that if the acts of defendant's servants were characterized by willfulness or capriciousness punitive damages might be awarded, is erroneous if it fail to state what acts were referred to and what servants were meant.

6. Same.  *Must not be confusing.*

    Where, in an action against a railroad company for failure to stop a train at a flag station, the evidence showed that the only signal to stop was made by a third person, an instruction submitting the question whether plaintiff signalled the train, and charging that if the train was signalled by a third person, and if the servants of the company saw, or by the exercise of ordinary care might have seen, plaintiff's signals, plaintiff should recover, was erroneous as calculated to confuse the jury, and for want of evidence of which to predicate it touching signals given by plaintiff himself.

From the circuit court of Alcorn county.

Hon. Eugene O. Sykes, Judge.

Lanning, appellee, was plaintiff, and the railway company, appellant, was defendant in the court below. From a judgment in plaintiff's favor the defendant appealed to the supreme court.

The evidence for plaintiff was to the effect that defendant's train was scheduled to stop at Glen, a flag station on its road, when signaled by those desiring to take passage thereon; that plaintiff, who was a physician, lived at Corinth, and was at Glen station January 21, 1902, and desired to board the passenger train for his home; that one Fields took a piece of wrapping paper two or three feet long and signaled, but the train did not stop; that Fields began signaling just after the whistle for the station was sounded, and continued to flag until the train was almost upon him, when the engineer again sounded the whistle, but did not stop the train; that it was light enough for one to see a man for a quarter of a mile down the track; that the

county roads between Glen station and Corinth were in bad condition and the waters in the streams high, which prevented plaintiff from traveling the dirt road to Corinth, and he was compelled to walk the railroad track to Corinth, about eight miles, part of the way in the rain. The engineer of the train testified, for defendant, that it was his duty to sound the call and be on the watchout for signals in approaching the flag station; that he sounded the call for signals about a half mile from the station, but gave no other signal; that he was on the lookout for signals, and none were given; that no one was standing on the track, but when he reached the station he saw a man on the south side of the track. The evidence for defendant was to the effect that it was dark when the train reached Glen's station.

The first and third instructions given for plaintiff are as follows:

"(1) The court instructs the jury for the plaintiff, Lanning, that if they believe from the evidence in this case that defendant's passenger train, No. 35, was scheduled to stop at the station of Glen's when signaled to stop by those desiring to take passage thereon, and that Lanning, so intending, signaled said train, or that said train was signaled by Fields; and if they further believe from the evidence that the servants of said company in charge of said train could have, or by the exercise of ordinary care and diligence they should have seen Lanning's signals, the defendant is guilty of negligence and carelessness in not seeing said signals and stopping said train for him to take passage thereon, they should find for Lanning, and assess his damages in such sum as he by the evidence may show himself entitled."

"(3) The jury are the sole judges of the damages, and, should they find for the plaintiff, in assessing compensatory damages they may take into consideration the physical pain, fatigue, and inconvenience to plaintiff because of the wrong done him; and should they believe that the acts of defendant's

servants were characterized by willfulness or capriciousness, they may go beyond compensatory damages and assess punitive damages."

*W. L. Lamb,* for appellant.

The witnesses for the appellee do not say the engineer saw them flag the train, or that he could have seen them by reasonable diligence on his part, they only say they could see the train and could see a man upon the track after the train had passed. The engineer states positively he did not see the flag, nor did he see any one trying to flag the train, and if he had done so he would have stopped the train. The testimony of the engineer is not contradicted by any witnesses.

The exact question raised here was passed on by this court in the case of *Chicago, etc., R. Co.* v. *Packwood,* 59 Miss., 282, and the court says, as follows: "It is not a question of credability of witnesses nor of conflict of testimony, but one in which the plaintiff having made out his case is met by proof on the other side, not in denial of his, but which, admitting the absolute truth of everything proved by him, goes further and nullifies its effect by proof of other facts which demonstrate that he has no right to recover. The plaintiff closed when he made out his case. The defendant responds, not by denying or conflicting evidence, but by proving something additional which negatives his right to recover." *Railroad Co.* v. *Smith,* 67 Miss., 15.

The proof shows that the train passed the station at 5:40 P.M., and the day was a cloudy, rainy day.

It is a matter of common knowledge that in January, and especially at that time of day, it is dark, and especially so a cloudy, rainy day. This is proof that seems to us ought to have considerable weight in passing on the testimony in the case. It shows conclusively that the testimony of the appellant on that point is correct, namely, that the day was dark and the kind of flag used by appellee could not be seen, if any flag at all was

used. There is no evidence that the engineer did see the flag or could have seen it by reasonable care. The proof for appellee is mere conjectural, while the proof for appellant is clear, positive, and conclusive.

The first instruction for plaintiff is open to very severe criticism.

The law requires such a signal to be given, as could be seen by reasonable care and diligence. The charge makes the company liable no matter what kind of signal was given. A signal to stop could be given which could not be seen at all, and if given would not amount to a sufficient signal to stop a train, but under this charge any kind of signal would be sufficient, no matter how insignificant.

The second instruction given for appellee tells the jury they may assess punitive damages if they believe defendant's servants saw Lanning's signal and their failure to stop the train was either willful or capricious on their part.

This is not a case where punitive damages should be allowed and this charge should not have been given at all. There is nothing in the evidence to show there was any willfulness on the part of the servants of the company to stop the train, or anything that amounted to gross negligence. The law in this state is plain and conclusive on that point. *Railroad Co.* v. *Scurr,* 59 Miss., 461; *Railroad Co.* v. *Kendrick,* 40 Miss., 374.

*Johnson & Sharp,* for appellee.

We do not believe it possible to find two cases more clearly in point with this case, both on the facts in evidence, and the law as laid down by this court, than *Wilson* v. *N. O. & N. E. R. R. Co.,* 60 Miss., 252; *White* v. *Y. & M. V. R. R. Co.,* 82 Miss., 120; s.c., 33 So. Rep., 970.

In the *Wilson Case,* on a state of facts almost identical with the case at bar, except that plaintiff did not have to walk to his destination, the trial court instructed the jury, at the instance of the defendant, "That there was no proof of willful or capri-

cious wrong, and plaintiff was not entitled in any view of the case to recover more than the actual pecuniary loss sustained by him." The jury found for plaintiff in sum to indicate compensatory damages only; plaintiff appealed, and the court said in reversing the case, "Where there was no conflict of testimony as to whether or not the signals made for the train to stop were seen, or might by reasonable care have been seen, by the employees of the company, it was error for the court to instruct that there was no proof of willful wrong, and plaintiff was not entitled in any view of the case to recover more than the actual pecuniary loss sustained by him."

In the *White Case,* on evidence the same in all essential particulars with the case at bar, and with the *Wilson Case,* the lower court, for the plaintiff, instructed the jury in consonance with the opinion of the court in the *Wilson Case,* but refused to instruct the jury for the defendant, "That if they believed from the evidence that the engineer's failure to stop said train in accordance with said signals was not due to malice or deliberate design, or willfulness or wantonness, they may only award such actual loss as he may have sustained, etc." The refusal of the lower court to so instruct the jury for defendant was held to be reversible error.

In the case at bar, there was a palpable conflict of testimony as to whether or not the signals made by plaintiff for the train to stop were seen, or might, by ordinary care, have been seen by defendant's engineer; and the trial court profiting by the errors in the two cases above cited, steered a straight and safe course between the Scylla and the *Wilson Case,* by giving plaintiff's second instruction, and the Charybdis of the *White Case,* by giving defendant's fourth instruction, and has arrived at this port of the court with a record, as we believe, free from even immaterial error.

TRULY, J., delivered the opinion of the court.

The second instruction given for appellee is erroneous. It

tells the jury that if they believe "that the engineer, or other employees, saw Lanning's signal, and their failure to stop the train was either willful or capricious on their part," then they were authorized to impose punitive damages.    There was no proof to sustain the proposition that any "other employees" saw the signal, and the testimony leaves it uncertain as to whether or not the engineer saw it.    Another defect in the instruction is that it should have stated that if the engineer "saw and understood the signal to stop," as was stated in *R. R. Co.* v. *White,* 82 Miss., 120; s.c., 33 South., 970.

The third instruction for the appellee is too broad in its terms.    It states to the jury that, should they believe "that the acts of defendant's servants were characterized by willfulness or capriciousness," they might assess punitive damages.    The jury by this instruction were given no definite idea as to what "acts" were referred to, what "servants" were meant, or to what special matter their intention was intended to be directed.

There is no contention or suggestion that any signal was given on the occasion mentioned, other than the one testified to as having been made by the witness, Fields.    Therefore the first instruction for appellee was erroneous, and calculated to confuse, in submitting to the jury the question of whether Lanning "signalled said train."    Under the facts of this case we might not reverse for this alone, but, as a new trial must be awarded for reasons hereinbefore indicated, this error should also be avoided on another trial.

The true rule as to the measure of damages in cases where passenger trains, being properly signaled by prospective passengers, fail to stop at flag stations, is this: If the engineer and fireman in charge of the locomotive, through no fault of their own, and while in the exercise of due care on their part, fail to see or obey the signal on account of the manner in which it is given or by reason of prevailing atmospheric conditions, as fog or darkness, the railroad company is, for failure to stop the train, not liable; but if such employees fail to see the signal through

negligence on their part, or when by exercise of ordinary care they could have seen it, the party damaged is entitled to recover compensatory damages; and if the signal is seen and understood by said employees, and their action in not stopping the train is malicious, wanton, or capricious, then the question of the infliction of punitive damages may properly be submitted to the jury. This is the principle deducible from the opinion in the *Wilson Case,* 63 Miss., 352, and the *White Case, supra,* and this rule should serve for the guidance of the court in granting instructions upon another trial of this cause.

*Reversed and remanded.*