MARY BURNS v. ALABAMA & VICKSBURG RAILWAY COMPANY.

[47 South. 640.]

1. APPEAL AND ERROR. *Excessive damages.*

The question whether a verdict is or is not excessive, must be determined in the light of the instructions given the jury for their guidance, although they may have unduly narrowed the measure of damages.

2. SAME. *Railroads. Failure to stop on signal. Excessive award.*

Where a railroad company failed to stop its passenger train at a flag station, the usual signal to stop having been duly given, and the plaintiff consequently was unable to become a passenger, was caught in a rain and became sick, a verdict for one thousand dollars actual damages was excessive.

3. SAME. *Punitive damages.*

In a suit against a railroad company for its failure to stop a passenger train at a flag station, where there was affirmative testimony that the stop signal was distinctly given and that there was nothing to prevent defendant's employes in charge of the locomotive from seeing it, and the engineer and fireman each testified that he did not see it, that he was on the look out and could and would have seen it, if it had been given, the question whether the failure to stop the train was wilful, reckless or capricious, should have been left to the jury.

FROM the circuit court of Warren county.

HON. J. N. BUSH, Judge.

Mrs. Burns, appellant, was plaintiff in the court below; the railway company, appellee, was defendant there. From a small judgment in plaintiff's favor, too small to be satisfactory to her, she appealed to the supreme court.

The declaration alleged that plaintiff went to Beechwood, a flag station of defendant, to take a passenger train for Vicksburg, and that her companion had a lantern and stood on the track and flagged the train as it approached; that the train did not stop, but passed by, leaving plaintiff at the station without shelter and with no way of getting to Vicksburg. A storm came up, and before plaintiff could get to shelter she was caught in the rain, got wet, was made sick, and suffered. On the trial of the case plaintiff's witnesses testified in substantiation of the allegations of her declaration. The engineer testified that he saw no signal although he was on the lookout, as he rarely ever passed Beechwood without stopping and could have seen the signal had one been given. On the first trial the court instructed the jury that plaintiff could not recover exemplary damages, and they returned a verdict of $1,000. On motion of defendant this verdict was set aside and a new trial granted. On the second trial practically the same case was made out. The court again granted defendant an instruction denying plaintiff's right to punitive damages. The jury on the second trial returned a verdict in plaintiff's favor for $75.

Appellant sought to reinstate the verdict rendered on the first trial, and failing therein to obtain a new trial because of the instruction as to punitive damages.

*N. Vick Robbins* and *Alexander & Alexander,* for appellant.

It was error to set aside the first verdict and this court should reinstate it. The first trial was singularly free from reversible error. As between the two verdicts, based on the same testimony and practically the same instructions, the first we submit is

more apt to be just and right, because the course of the examination, if nothing else, brought to the knowledge of the jury the fact that the case has been tried once before and the natural inference would be that the judge disapproved of the first verdict. However this may be, the first verdict should be reinstated unless the court can find that there was reversible error on the first trial.

It was obvious error to instruct as a matter of law that punitive damages were not recoverable. There was no middle ground in this case for defendant to occupy. There is no pretense that a signal might have been given and yet that the engineer or fireman did not see it. Each of them testified that he was looking and could have seen the signal if given. There is no pretense that either was engaged about the engine. The jury were left without any alternative but to believe plaintiff's witnesses or defendant's. If the jury had believed the engineer and fireman, they would necessarily have found that no signal was given, and this would involve a total rejection of plaintiff's testimony. On the other hand, the jury by accepting the testimony of plaintiff necessarily rejected that of defendant. Compensatory damages alone would be proper only if the jury believed that the engineer and fireman were not looking and that this was simple negligence, but this view would be supported neither by the testimony for plaintiff nor by that for defendant. As to this assignment of error the case is on all fours with that of *Railroad Company v. While,* 82 Miss. 120, and *Railroad Company v. Hawkins, Ib.* 209.

In *Railroad Company v. Jamison,* 63 Miss. 33, this exact question arose. The engineer testified that he was on the lookout and did not see the children on the track, but the court held under the evidence that the jury had the right to disbelieve him and find that he in fact did see them, and so, in this case, the jury had the right to disbelieve the engineer and fireman, and evidently did disbelieve them. It will hardly be denied that if the engineer or fireman did see the signal and ignored it,

defendant is liable for punitive damages. If then, it was a matter for the jury to determine whether or not the engineer and fireman did see the signal, it necessarily follows that if the jury find that they did see the signal, it was authorized to assess punitive damages.

*McWillie & Thompson,* for appellee.

Were the judgment setting aside the first verdict before the court—we contend that it is not—there should be no reversal because that verdict was properly set aside.

In arguing the question of plaintiff's right to punitive damages appellant contends that the evidence shows that the engineer and fireman would have seen the signal if one was made, and that it was made, *ergo,* they saw the signal, and wilfully ignored it. Conceding for argument's sake that they saw what was called a signal, and did not respond to it, when, as shown, they always incurred great hazard by not stopping for signals and would have stopped had the signal been made so as to suggest a call for a stop, was it not necessary that plaintiff's instructions should have defined what kind of signal was given, and not left the jury to treat any old signal as sufficient? The evidence left it gravely in doubt whether any such signal was given as would attract the attention of the engineer as calling for a stop and an insufficient signal that would not be recognized as calling for a stop by an engineer on the watch and exercising due care, being equivalent to none at all, the jury ought not to have been left without guide as to what was a sufficient signal.

It has often been held by this and other appellate courts that where the engineer and fireman are shown in cases like this to have been at their posts exercising due care, punitive damages are not allowable unless it be shown that they saw the signal and the failure to stop was due to malice, insult or wilful wrong. The appellant contends that if the engineer and fireman were exercising due care they are bound to have been the signal because it was given, and the liability for punitive damages there-

fore arises. The law does not sanction that view. If it did, punitive damages would be allowable in all cases, and we know that they are not. The very fact which under the rulings of this court exonerates railroad companies from liability where engineers and firemen did not see the signal given is asked to be made the basis upon which liability is fixed, that is to say, that they were on the watch at their posts of duty.

While the plaintiff's witnesses say that the colored man "General Downing" signalled the train as it came round the curve, it is worthy of observation that they say that the train was late, that no whistle was blown and they did not know the train was coming until they saw the reflection of the light on the bank, and that the General then ran out to give the signal and had to get out of the way to keep from being run over, and that plaintiff and Mary Cook and her children did not start from the store to the track until the train which was running very rapidly was at the stopping place. These matters that dropped out in the progress of the story, are full of significance. They show that there was great haste occasioned by the brevity of time, and the general may not have reached the track or he may have been too close to the oncoming train for the engineer to see him and the light of his lantern lost to view in the greater brilliancy of the electric headlight, especially as it was raining and all objects seen through the dripping window panes of the engine must have been more or less obscure. It may be that the failure to give a proper signal was due to lack of time, and that the lack of time resulted from the ordinary negligence attending an omission to blow the whistle, still that would not make a case for punitive damages, but it does illustrate fully the importance of being clear in the instructions as to what sort of signal would be a sufficient one.

Fletcher, J., delivered the opinion of the court.

Without deciding the point made as to whether this record as presented warrants us in considering the action of the court be-

low in setting aside the first verdict, we think such action must be sustained on the ground that the verdict of the jury was excessive, a point distinctly averred in the motion for a new trial, and which might well have been the basis of the court's action. It must be remembered that the jury was limited by the instructions to actual damages, and, though we believe that the question of punitive damages should have been submitted to the jury, yet the verdict must be tested in the light of the issues upon which the jury actually passed. *Edmunds v. Mister,* 58 Miss. 765. We cannot approve a verdict of $1,000 as actual damages in this case upon the showing here made as to extent of the injuries resulting from the alleged negligence of the company. We must therefore decline to reinstate the first verdict.

Coming, now to the second trial, the plaintiff's testimony clearly establishes that the signal to stop was given at the usual place, in the usual manner, and as soon as the train came in sight around the curve. The engineer swears positively that he was on the lookout for signals, that it was an unusual thing for the train to pass Beechwood without stopping, and that, despite the inclement weather, he would have seen the signal had it been given in the manner testified to by plaintiff's witnesses. This brings the question of punitive damages squarely within the rule laid down in *Wilson v. N. O. & N. E. R. Co.,* 63 Miss. 352; *Yazoo & M. V. R. Co. v. White,* 82 Miss. 120, 33 South. 970; *Southern Ry. Co. v. Lanning,* 83 Miss. 161, 35 South. 417. In view of the testimony here given, it was for the jury to say whether the failure of the employees to stop the train was wilful, reckless, or capricious; and the second instruction granted defendant, denying the right to punitive damages under any circumstances, was erroneous.

*Reversed and remanded.*