KANSAS CITY, MEMPHIS & BIRMINGHAM RAILROAD COMPANY *v.* BEVERLY CHILES.

1. PERSONAL INJURIES. *Release of claim. Validity. Evidence.*

Good faith on the part of a wrongdoer by whose negligence personal injuries are caused and a full understanding on the part of the person injured as to his legal rights are indispensable to the validity of a release of claim for the injuries; and evidence as to all the surrounding conditions and the relative attitudes of the contracting parties is admissible upon an issue as to the validity of such a release.

2. SAME. *Concrete case. Questions for jury.*

Evidence examined and adjudged sufficient to present the following question for the determination of a jury: Whether plaintiff was guilty of contributory negligence; whether the release of plaintiff's claim was obtained by defendant in good faith, with a full understanding on plaintiff's part of his legal rights; and whether the rate of speed in excess of that allowed by law was the proximate cause of plaintiff's injuries.

FROM the circuit court of Monroe county.

HON. EUGENE O. SYKES, Judge.

Chiles, the appellee, was plaintiff, and the railroad company, the appellant, was defendant in the court below. From a judg-

ment in plaintiff's favor the defendant appealed to the supreme court.

The facts are either stated in, or are clearly inferable from, the opinion of the court.

*J. W. Buchanan,* for appellant.

The court erred in refusing the peremptory charge asked on the part of the appellant.

First—Because the speed of the train was not the proximate cause of the injury, and the same could have been avoided but for the gross negligence of the appellee.

Second—Because the appellee signed a release in full satisfaction of all supposed claims that he had against the appellant for a valuable consideration.

The testimony shows that appellee was at a place where he had no right to be. His day's work was completed, and he took the chance of going home over the railroad right of way rather than the public road. He was in no sense doing any duty required of him by the railroad company.

The appellee signed a release in full satisfaction of all damages sustained by the accident to him. There is nothing in the record to bring this case within the rule of the case of *Jones* v. *Railway Co.,* 72 Miss., 32, or *Railway Co.* v. *Jones,* 73 Miss., 110.

It will be borne in mind that this accident occurred on December 16, 1902. The settlement was made on February 12, 1903. In the Jones case the accident happened on one day, the negro's leg was amputated on the next, and on the evening of the day his leg was amputated, while under the influence of opiates, the release was obtained.

*W. H. Clifton,* for appellee.

A release, purporting on its face to be a complete settlement, has in its favor the strong presumption of validity which attaches to all written instruments, and the evidence to set it

aside must be clear, precise, and indubitable. On the other hand, one who signs a written instrument without intending to, and who is chargeable with no negligence in not ascertaining the character of it, is no more bound than if it were a forgery. And this result will follow whether the signing was through mistake and surprise or from fraud. One of the most common claims by which it is sought to avoid a release in personal injury cases is that the instrument was signed in the belief that it was an instrument of a different nature. In such cases the person seeking to avoid the release on the ground of fraud or mistake is not required to return what he has received.

In personal injury cases involving this question, ordinarily the facts are in some respects peculiar, and in determining whether the release is binding or not, we should look to the condition of the injured person, the relation of the parties, and the circumstances preceding and attending the execution of the instrument. *Jones* v. *Ala. & V. Ry. Co.,* 72 Miss., 22; *Norfleet* v. *Beale,* 34 South. Rep., 328; 20 Am. & Eng. Ency Law (1st ed.), p. 761, and notes; *Welsh* v. *Railway Co.,* 70 Miss., 20; *Sobieski* v. *St. Paul & D. Ry. Co.,* 42 N. W., 863; *O'Brien* v. *Railway Co.,* 57 N. W., 425; *Bliss* v. *Railway Co.,* 36 N. E., 65.

On the merits of the case defendant is liable under Code 1892, § 3546, for the injury inflicted, although plaintiff may have been a trespasser on its right of way at the time he was hurt. Patterson's Railway Accident Law, p. 192, note 4; *C. R. R. Co.* v. *Bruinson,* 19 Am. & Eng. Ry. Cas., 42. The excessive speed was the only thing that could have cast the bar of iron off at such a tangent. *A. & V. Ry. Co.* v. *Carter,* 77 Miss., 511; *Stevens* v. *Yazoo, etc., R. R. Co.,* 81 Miss., 195.

Argued orally by *J. W. Buchanan,* for appellant, and by *W. H. Clifton,* for appellee.

TRULY, J., delivered the opinion of the court.

Appellant contends that it was entitled to a peremptory

charge in its favor on the trial in the court below. This contention is based on two theories:

First—That the testimony proved beyond a doubt that appellee's own negligence contributed to his injury, and that the rapid speed at which its train was running through the corporate limits of the town of Nettleton at the time of the injury was not the proximate cause thereof. The proof shows that appellee was an employe of appellant, and was at the time of the accident on his way home on his customary route, at the conclusion of his day's work. This route led him over a well-defined path invariably traveled by the public, running on the embankment and near the roadbed of appellant. At the time of the accident appellee was some distance from the track, having stepped off the embankment to avoid the train, and when he received the injury was standing at the foot of the embankment, twelve or fourteen feet distant from the passing train. We do not think that this conduct on the part of appellee could be reasonably construed as contributing in any degree to his injury. According to the uncontradicted testimony, he had taken every reasonable precaution to avoid danger, and was standing so far from the train as to be absolutely removed from all probability of injury from the train itself or from anything which might have been attached to any of the cars. As the train went by, one of the drawheads, or some iron appliance connected therewith, broke, and the excessive rate of speed at which the train was running propelled the broken part at such a tangent and with such velocity that it struck appellee with sufficient force to fracture his leg. It occurs to us to be so plain as to become manifest from bare statement that the rate of speed could alone have caused the injury. The simplest laws of physics prove that, had the train been going at the moderate rate of speed required by law, the broken iron would, by force of natural gravity, have fallen to the ground, under the train, or at most could have been cast only a short distance beyond the roadbed.

The second ground on which appellant contends that it was entitled to have had a verdict directed in its favor is because of a release which it was claimed the appellee had executed.   In view of the animadversions which this court has found it necessary in the past to pronounce upon the conduct of certain claim agents in procuring releases from parties injured, we deem it unnecessary to set out with any wealth of detail the nefarious methods employed in the instant case, further than to say that they clearly merit the strictures and condemnation announced in previous adjudications.   The same gross deception was used—intangible promises of permanent employment; imposition upon a suffering and ignorant claimant; insistence upon immediate settlement urged by his former employer; lack of opportunity granted to confer with friends or counsel; grossly inadequate payment for the injury inflicted—in this case being only the paltry sum of ten dollars; and a specious and nonenforceable contract of reëmployment, which expressly recited that such service should be "for such time only as may be satisfactory to said company."   All these circumstances of fraud and oppression exist, coupled in the instant case with a transparent attempt to take advantage of and ignore the attorney who had been employed, and to clandestinely effect a settlement without his knowledge or consent, after first advising with him and promising to investigate and take up the claim for adjustment.   The appellant company was fully advised that a contract of employment existed between appellee and his counsel, by notice both to its legal and claims departments, and cannot evade the legal effect of such notice by claiming that some subordinate official in the claims department settled the same and procured the release admittedly for the sole benefit, but without the knowledge or procurement, of the corporation—especially in view of the fact that the record discloses that the claim was referred to such subordinate, and that the voucher for the money paid the appellee, containing a full and definite state-

ment of the claim in settlement of which it was issued, was submitted to and received the written approval of the very official (the chief claim agent) who had written to the attorney for "full particulars," in order that he might "make proper investigation of the case," and "advise disposition of the claim at an early date." The bare statement of the circumstances attendant upon the procuring of the release in the instant case is more than sufficient to demonstrate that there was an utter absence of that good faith and full understanding of legal rights which are indispensable to the validity of such releases. No release of this nature should be upheld if any element of fraud, deceit, oppression, or unconscionable advantage is connected with the transaction. And in passing on the validity of such release, when assailed, all surrounding conditions should be fully developed, and the relative attitudes of the contracting parties clearly shown. So that the jury, in the clear light of the whole truth, may rightly decide which story bears the impress of verity. In this view, the action of the court in admitting the correspondence which had passed between counsel for appellee and the officials of appellant was clearly correct. This proof made clearly visible the secret springs moving the officials of the claims department, and tended to throw light upon some of the details of the iniquitous scheme by which an ignorant, suffering, and impecunious man, by proffer of financial relief. from present distress, joined with vague and misleading suggestions of future benefits and favors, was tricked into bartering away substantial rights for a grossly inadequate consideration, by signing papers the contents of which, according to his testimony, which is strongly corroborated by the circumstances in evidence, were deliberately and designedly misrepresented.

None of the other objections urged either to the instructions or the admission of testimony, even if well taken, could possibly have affected the result.

According to the record, the appellee is permanently injured

—perhaps disabled for life; the right result was reached; the verdict is moderate; hence the judgment is

*Affirmed.*