St. Louis & San Francisco Railroad Company *v.*
J. A. Ault.

[58 South. 102.]

1. Master and Servant. *Injuries to servant.   Instructions.   Trial.*

In a suit by the engineer of a passenger train against a railroad for personal injury caused by running into an open switch, negligently left open by a freight train brakesman, an instruction that if the "railroad or its employees" were guilty of negligence was not objectionable in that it did not point out what employees were negligent, where the single act of negligence charged was the leaving of the switch open and the only servant of the defendant who could have been guilty of any negligence at all was either the brakesman or conductor in charge of the freight train.

2. Same.

Common sense and not hypercriticism should govern the court in passing upon instructions given or refused.

3. INVALID RELEASE.  *Tender of money received for release.*

Where a release from damages for personal injury is obtained by fraud, it is void and the plaintiff on bringing suit need not tender the money received thereunder, but the jury on rendering a verdict for plaintiff should give the defendant credit for the money paid for such release and legal interest thereon.

4. CONTRIBUTORY NEGLIGENCE.  *Defense to gross negligence.*

Mere contributory negligence on the part of plaintiff is no defense to reckless or wanton negligence by the defendant.

APPEAL from the circuit court of Monroe county.
HON. J. H. MITCHELL, Judge.

Suit by J. H. Ault against the St. Louis & San Francisco Railroad Company. From a judgment for plaintiff, defendant appeals.

The facts are fully stated in the opinion of the court.

*Sykes & Sykes* and *J. W. Buckanan,* for appellant, filed an elaborate brief too long for publication covering the points decided by the court and citing the following authorities: *Railway Co.* v. *Jones,* 73 Miss. 121; *Dowell* v. *Railway Co.,* 61 Miss. 532; 1 Labatt on Master & Servant, p. 516; *White case,* 72 Miss. 19; 8 Am. & Eng. Anno. Cas., p. 3, *et seq., Railway Co.* v. *Deweese,* 82 C. C. A. 190, 153 Fed. 56; *Railway Co.* v. *Bishard,* 78 C. C. A. 62; *Railway Co.* v. *Block,* 86 Miss. 426; *Railway Co.* v. *Guess,* 74 Miss. 170; *Railway Co.* v. *Thomas,* 51 Miss. 637; *Harris* v. *State,* 50 So. Rep. 626; *Hampton* v. *State,* 88 Miss. 259; *Sheenan* v. *Kearney,* 82 Miss. 702; 3 Wigmore on Evidence, sec. 1958, p. 2603; 2 Wigmore on Evidence, sec. 980, *et seq.,* p. 1108; *Railway Co.* v. *Chiles,* 86 Miss. 366; *Railway Co.* v. *Lanning,* 83 Miss. 167; *Railway Co.* v. *Williams,* 87 Miss. 354-5; *Telephone Co.* v. *Boker,* 85 Miss. 493; *Wagner* v. *Gibbs,* 80 Miss. 63, sec. 7163; Thompson on Evidence (2 Ed.), p. 246.

*Wm. Baldwin* and *D. W. Houston,* for appellee, each filed an extended brief covering all the questions de-

cided by the court but too long for publication, citing the following authorities: *Clisby's Railroad,* 78 Miss. 943-944; *Lake Shore & C. R. R. Co.* v. *Parker,* 131 Ill. 557, 23 N. E. 237, affirming 33 Ill. App. 405; *Bucklew* v. *Central Iowa R. Co.,* 64 Iowa, 603, 21 N. W. 103; *Somerset, etc., R. Co.* v. *Galbraith,* 109 Pa. St. 32, 1 Atl. 371; *Mothershed case,* 20 So. 67, 26 So. 10; *Railroad Co.* v. *Farr,* 94 Miss. 559; *Railroad Co.* v. *Wallace,* 91 Miss. 492; *Railroad Co.* v. *Thompson,* 64 Miss. 584; *Railroad Co.* v. *Scott,* 95 Miss. 43; *Hardy* v. *Railroad Co.,* 88 Miss. 752; *Railroad Co.* v. *Brown,* 77 Miss. 342; *Railroad Co.* v. *Barrymore,* 85 Miss. 454; *Railroad Co.* v. *Block,* 86 Miss. 434; *Railroad Co.* v. *Barrymore,* 87 Miss. 273; *Railroad Co.* v. *Baker-Kansas,* 98 Pac. 804; *Railroad Co.* v. *Bodemer,* 139 Ill. 596, 29 N. W. 692, 232 Am. St. Rep. 218; *Lacey* v. *Railroad Co.,* 81 C. C. A. 362, 152 Fed. 134; *Railroad Co.* v. *Bryan,* 107 Ind. 51, 7 N. E. 807; *Railroad Co.* v. *Lee,* 92 Ala. 271, 9 So. 234; *Railroad Co.* v. *Webb,* 12 So. 374; *Railroad Co.* v. *Lee,* 92 Ala. 262, 9 So. 230; *Pipe Works* v. *Dickey,* 93 Ala. 420, 9 So. 720; *Railroad Co.* v. *Chewning,* 93 Ala. 29, 9 So. 458; *Railroad Co.* v. *Baker-Kansas,* 98 Pac. 804; *Railroad Co.* v. *Bodemer,* 139 Ill. 596; 3 Rapalje and Macks Digest of Railway Law, 273; *Railroad Co.* v. *Turnbull,* 71 Miss. 1038; *Jones* v. *Railroad,* 72 Miss. 24; *Bean* v. *Railroad,* 107 N. C. 731, 10 Am. & Eng. R. R. Cas., 716, 11 Ib. 128, 26 Ib. 203; *Railroad Co.* v. *Harris,* 158 U. S. 326; *Jones* v. *Railroad Co.,* 72 Miss. 31, 109 Ill. 120, 127 Mass. 86, 18 Kan. 58; *Doyle* v. *Railroad,* 16 Kan. 58; *Peters* v. *Railroad Co.,* 39 N. W. 486, and cases cited in notes, 5 Ency. of Ev., 623-4-5 and 8, and notes; *Tuner* v. *City of Newburgh,* 16 N. E. (N. Y.) 346; *Railroad Co.* v. *Wood,* 14 N. E. (Ind.) 573; *Railroad Co.* v. *Chiles,* 86 Miss. 365; *Railroad Co.* v. *Fowler,* 30 Am. & Eng. R. Cases (N. S.) (Ill.), 715; *Railroad Co.* v. *Welch,* 52 Ill. 183, 4 Am. Rep. 596; *Sobueski* v. *Railroad Co.,* 42 N. W.

(Minn.) 863; *Mullen* v. *Railroad Co.*, 34 Am. Rep.
(Mass.) 349; *Lusted* v. *Railroad Co.*, 36 N. W. 857, Syllabus; *Ryan et al.* v. *Gross*, 12 Atl. (Md.) 115; *Welch*
v. *Railroad Co.*, 70 Miss. 20; *Railroad* v. *Kasiscake*, 19
Am. & Eng. R. R. Cases (New Series), 407; *Shock* v.
*Railroad Co.*, 52 C. C. A. (5 Cir. App. Miss.) 651; 24
Am. & Eng. Ency. Law (2 Ed.) 318; *Railway Co.* v.
*Jones*, 73 Miss. 127; *Jones* v. *Railway Co.*, 72 Miss, ——;
*Railroad Co.* v. *Harris*, 158 U. S. 326, 39 L. Ed. 1003;
*Railroad Co.* v. *Jones*, 73 Miss. 110; *Hilt* v. *Terry*, 92
Miss. 671; *American Insurance Co.* v. *Antrum*, 88 Miss.
518; *Railroad Co.* v. *Williams*, 87 Miss. 344; *Railroad* v.
*Boswell*, 85 Miss. 313; *Lumley* v. *Railroad Co.*, 6 Am.
& Eng. R. R. Cases (N. S.) 82; *Johnson* v. *Rowe Ry. &
L. Co.*, 4 Ga. App. 742, and *Platt* v. *Sou. Phote Material Co.*, same book, 164; *Dowell* v. *Railroad Co.*, 61 Miss.
519, 432; *Railroad Co.* v. *Block*, 86 Miss. 426; *Railroad
Co.* v. *Brown*, 77 Miss. 338, 29 So. 949; *Railroad Co.* v.
*Thomas*, 51 Miss. 637; *Railroad Co.* v. *Leighty*, 88 Tex.
606, 32 S. W. 515; *Lake Shore* v. *Parker*, 23 N. E. (Ill.)
237; *Railroad Co.* v. *Humphreys*, 83 Miss. 734; *Stevens*
v. *Railroad Co.*, 81 Miss. 195; *Bell* v. *Railroad Co.*, 87
Miss. 234; *Owens* v. *Railroad Co.*, 94 Miss. 387; *Railroad Co.* v. *Dewees*, 82 C. C. A. (8th Cir.) 192; *Wood*
v. *State*, 58 Miss. 741; *Railroad Co.* v. *Wood*, 14 N. E.
(Ind.) 573; *Railroad Co.* v. *A. P. Alsobrook*, ————
——; *Wilson* v. *Railroad Co.*, 63 Miss. 353; *Wagner* v.
*Gibbs*, 80 Miss. 61; *Reed* v. *Railroad Co.*, 94 Miss. 641;
*Railroad Co.* v. *Lanning*, 83 Miss. 167; *Railroad Co.* v.
*Williams*, 87 Miss. 344; *Bradford* v. *Taylor*, 85 Miss.
409; *Railroad Co.* v. *Farr*, 94 Miss. 599; *Railroad Co.* v.
*Wallace*, 91 Miss. 492; *Railroad Co.* v. *Thompson*, 64
Miss. 584; *Railroad Co.* v. *Cobb*, 94 Miss. 564; *Railroad
Co.* v. *Scott*, 95 Miss. 43; *Railroad Co.* v. *Wallace*, 91
Miss. 497.

Argued orally by *E. O. Sykes*, for appellant.

Argued orally by *D. W. Houston*, for appellee.

McLean, J., delivered the opinion of the court.

The plaintiff was in the employ of the appellant. He was the engineer in charge of appellant's train, known as the New York Limited, a fast passenger train, and plaintiff's run was from Memphis, Tennessee, to Amory, Mississippi. On March 6, 1909, appellee was driving this train, and arrived at Holly Springs, on schedule time, 10:37 p. m. East of Holly Springs, and within less than a mile of the Holly Springs depot, was a side or passing track. A short time before the happening of the injury complained of a freight train of the defendant pulled in on this side track for the purpose of permitting this passenger train to pass, and the train stopped so that the caboose of this train stood about seventy-five feet from the switch, and the track on which the freight train stood was on the left-hand side of the main line; the appellee's position on his engine in passing being on the right-hand side of the engine, which put him to the right of the passing track. The evidence discloses that the employees in charge of the freight train knew the schedule time of the passenger train; indeed, they were required to know this time. As the freight train pulled into the side track, the conductor of the freight train, who was standing at the switch, instructed his brakeman to close the switch. The brakeman, instead of closing the switch, and instead of standing at the switch in order to give signals to the passenger train, went into the caboose, and was in the caboose at the time of the injury complained of. There was no light or signal at the switch to indicate that the switch was open. The conductor of the freight train went to the depot at Holly Springs and there conversed with the appellee, but said nothing to him about the freight train being on the passing track. It was necessary, in order for ap-

pellee to take his train out of Holly Springs, to back
the train for some considerable distance in order to get
upon the main line. After getting, upon the main line
there was a heavy grade for some distance, over which
appellee's train was compelled to go, and in order to
make the grade it was necessary to accelerate the speed
of the train. After making the grade appellee slowed
down his train to about ten or twelve miles an hour,
and was at his post of duty keeping a careful lookout,
when, a short distance before he reached the switch, he
discovered, by the points of the switch, that the switch
was open, so as to cause his train to run into the switch
track, and at the same time discovering the rear end of
the freight train upon this side track. Owing to the cur-
vature of the track, the open switch could not be discov-
ered until the engineer was within a short distance of
the switch. Immediately upon making this discovery,
the engineer sanded the track, applied his emergency
brakes, and did everything possible to stop his train.
Having done all that it was possible for him to do in
order to protect the passengers, and being unable to
avert the impending collision, and realizing that remain-
ing any longer at his post of duty would be unavailing,
both the engineer and the fireman leaped from the train.
The fireman jumped to the left, and the engineer to the
right of the engine. The fireman escaped uninjured. The
engineer fell upon his right leg, or buttock, striking the
same on or across the iron rail. He was badly bruised,
and his whole body shocked and hurt, by the force of
the fall. He immediately began to suffer, but continued
his run to Amory. Within two or three days thereafter,
as a result of the blow, injury, and shock, the whole left
side of the appellee became paralyzed. He became a
paralytic, the hearing in one ear and sight in one eye
practically gone; the evidence showing that he is prac-
tically a mental and physical wreck, and that these in-

juries are permanent. Verdict in the court below was rendered by a jury for the plaintiff in the sum of fifteen thousand dollars, less fifty dollars and interest; the same being amount paid by appellant to appellee in consideration of a release executed by appellee for the injuries.

There is but one count in the declaration, and the negligence complained of is the leaving open, by the employees in charge of the freight train, of the switch leading to the passing track, with the knowledge that this fast passenger train was due and about to pass; and the declaration charges willful, wanton, and gross negligence. The defendant pleaded, not only the general issue, but special pleas, wherein were set up the following defenses: First, that plaintiff, at the time of the injury was driving his train at a greater rate of speed than six miles an hour through an incorporated city or town; second, that he ran into the open switch without observing the rules of the railroad company relative to passing switches; third, that before the institution of the suit plaintiff received and accepted the sum of fifty dollars in payment of the injuries sustained. The contentions of appellant forcefully and ably presented, are the refusal of its peremptory instruction; the refusal of its instructions, marked 1, 2, 3, and 4; and the granting of plaintiff's instruction to the effect that "if the defendant railroad or its employees were guilty of gross negligence or reckless omission of duty, or of wanton disregard of the safety of plaintiff, and if it was the proximate cause of said Ault's injury and paralysis," etc.

An all-sufficient answer to each and every proposition argued by appellant relative to the refusal of its peremptory instruction is that each and every one of the questions submitted were controverted questions of fact —questions which the jury alone had the right to pass upon, and which were submitted to the jury under proper

instructions from the court, except as to the violation
of the speed statute, which we will notice later on.  The
instructions obtained by the appellant upon these dis-
puted questions of fact were exceedingly liberal, and
really more so than the law justified.  Refused instruc-
tion No. 2 was properly refused, because it asked the
court to charge, as a matter of law, that certain rules,
Nos. 27 and 559 in the rule book of the defendant, were
in full force and effect at the time plaintiff was injured.
That was a question of fact to be left to the jury, under
the evidence in the record, and not a question of law.
Refused instructions Nos. 1 and 3, which charged the
jury relative to the validity of the releases signed by
appellee, are subject to the just criticism that they omit
entirely the question of imposition, fraud, and undue
influence, practiced upon appellee, as well as his mental
condition, at the time when he signed the releases.  The
vice in refused instruction No. 4 is that it is a per-
emptory charge that the paralysis of the plaintiff was
not the direct, proximate result of his injuries.  This
was a question of fact for the jury.  Both the plaintiff
and the defendant received instructions upon both of
these questions, submitting them to the jury, and these
instructions announced correct principles of law appli-
cable to the evidence in the case.

It is urgently insisted that the instruction for plain-
tiff, to-wit, was erroneous:  "The court charges the
jury, for the plaintiff, Ault, that if they believe from a
preponderance of the evidence in this case that the rail-
road or its employees were guilty of gross negligence
and reckless omission of duty, and a wanton disregard
of the safety of plaintiff, which was the cause of said
Ault's injury, paralysis," etc.  The criticism is that the
instruction charges that "the defendant railroad or its
employees," thus making the charge too general—that
the instruction should have specified what employees,

and in support of the contention refers to *Railroad Company* v. *Lanning,* 83 Miss. 167, 35 South. 417. In Lanning's case the court says that: "The third instruction for the appellee is too broad in its terms. It states to the jury that, should they believe 'that the acts of defendant's servants were characterized by willfulness or capriciousness,' they might assess punitive damages. The jury by this instruction were given no definite idea as to what 'acts' were referred to, what 'servants' were meant, or to what special matter their attention was intended to be directed." The criticism by the court in Lanning's case is not at all applicable to the instruction in the instant case, for the manifest reason that in the instant case there was only one "act" of the defendant that was complained of; and, second, the only servant of the defendant who could have been guilty of any negligence at all was either the brakeman or conductor in charge of the freight train. It was the duty of the brakeman to close the switch, and the duty of the conductor, present at the time when the freight train passed into the switch, to see that the switch was closed; and it is immaterial whether one or both were guilty, and it must follow that there was no possible chance for the jury to be misled by the instruction given in the instant case. The sole test was, whether the defendant or either of its two servants were guilty of the "act" complained of.

Common sense, and not hypercriticism, should govern the court in passing upon instructions given or refused.

It is strenuously insisted that the plaintiff should not recover in this case, because he failed to return, or offer to return, to the defendant the fifty dollars received by him in liquidation of the injuries received. It is the well-settled rule in this state, as announced in *Jones* v. *Railroad Co.,* 72 Miss. 22, 16 South. 379, and reaffirmed in several subsequent cases, that: "If the release was

void, no tender was necessary. But all that is necessary is that the jury, in case a verdict should be found for plaintiff, should credit any amount they may find with the money paid plaintiff by defendant and legal interest thereon.'' This is the well-settled rule in this court, and is in accord with the weight of authorities in other states, and may be stated to be the generally accepted doctrine. The evidence in this case clearly and indisputably shows that the most shameful imposition was practiced upon appellee by the railroad company and its employees, in making the alleged settlement and in procuring Ault to sign the releases. Without entering into a full recital of the facts, it is sufficient to say that at the time Ault signed this release and accepted the pitiful sum of fifty dollars in settlement of the injuries received by him he was in the hospital of the railway company, at St. Louis, hundreds of miles away from his family and friends and advisers, surrounded by the paid employees of the railway company, almost a monomaniac upon the subject of once more obtaining employment with the railway company; and the assurances from the claim agent that the sum accepted and the release signed by him only related to the slight injury received on the leg are enough to demonstrate the imposition and fraud practiced upon this mentally weak and helpless individual. In addition, the claim agent had Ault to write in this release, ''I understand this release.'' This brings forcibly to mind the act of the thief, who, in order to throw off suspicion, hurried down the street, exclaiming, ''Stop, thief!''

Among the crowning glories of the common law is the principle that fraud vitiates every contract into which it enters, and that it does not and cannot look with any degree of allowance upon a contract secured through fraud or imposition, and that a contract so procured is of no benefit whatever to the parties securing it. It is,

indeed, strange to us that railroad companies will not heed the warning which has, so often and so repeatedly been attempted to be impressed upon them, by this and other courts, in exacting releases from those whom it injuries under such circumstances as is shown by this record, and we again refer to the expressions of this court used by that distinguished jurist, Judge Truly, in *Railroad Company* v. *Chiles,* 86 Miss. 365, 38 South. 498.

It is not at all necessary for us to decide whether the mere violation by plaintiff of section 4043 of the Code of 1906, which prohibits the railroad company from running its cars through an incorporated city or town at a greater rate of speed than six miles an hour, is a defense to this suit for the following reasons:

First, the plaintiff bottoms his right of recovery upon the ground that the defendant was guilty of reckless, wanton, and willful conduct; and the only instruction given for the plaintiff was that the mere contributory negligence of the plaintiff would not shield the defendant from liability by reason of the negligence of the defendant, where its negligence is marked by gross or willful or reckless misconduct. In *Railroad* v. *Block,* 86 Miss. 426, 38 South. 372, this court properly held upon a state of facts identical with the facts in this case, that: "Leaving the switch open at the time and under the circumstances shown, with a freight train and engine on the side track and a northbound passenger train nearly due and rapidly approaching, was an act of gross negligence, a reckless omission of duty, a wanton and criminal disregard of the safety, not only of the engineer and the fireman of the approaching train, but also of the passengers as well. In such a case mere contributory negligence on the part of the plaintiff is no defense." The evidence in the instant case unquestionably shows a reckless omission of duty, a wanton and crim-

inal disregard of the safety of the plaintiff; and consequently the mere fact that the plaintiff himself was guilty of simple negligence does not preclude his recovery. The rule is settled by all of the authorities that, where the defendant is guilty of willful, reckless conduct, the plaintiff's negligence is no answer to the suit.

Second, at the instance of the defendant the court, in defendant's first instruction, told the jury that "if they believe from the testimony that just before discovering the open switch plaintiff was running his engine at a rate of speed of over six miles an hour within the corporate limits of the city of Holly Springs, and was violating the rules of the defendant company in failing to have his train under control, and in failing to stop before entering the switch, then these acts of the plaintiff were the proximate cause of the injury, and the plaintiff could not recover." By the third instruction for the defendant the jury were charged that "if they believe from the testimony that under the rules of the company plaintiff should have had his train under control, and should have stopped it before entering the switch, because there was no light on the switchstand; and if they further believe from the testimony that plaintiff was running the engine at a rate of speed of over six miles an hour within the corporate limits of the city of Holly Springs just before he discovered the open switch, its rate of speed was unlawful; and if the jury believe from the evidence that these acts of the plaintiff, in violation of the rules of the defendant company and in violation of law, constitute gross, willful, or wanton negligence on the part of the plaintiff, and were the proximate cause of the injury, then the jury must return a verdict for the defendant." These instructions were certainly as liberal for the defendant as the law justifies, and as given to the jury under the facts shown in evidence the appellant has no cause of complaint.    *Affirmed.*