SMITH v. ST. LOUIS & S. F. R. Co. *et al.*

[73 South. 801, Division B.]

RELEASE. *Promise of re-employment. Injuries to servant. Fraud.*

Where a railroad engineer being injured, settled with the company for six thousand dollars, and executed a release one year after he received his injuries, which release he claimed was procured by the frudulent misrepresentations of the company that it would employ him as engineer when he had fully recovered, such representations if made did not render the release void, but at most, only voidable and the engineer cannot disregard it and sue at law on his original cause of action without returning or offering to return the consideration paid him, it is only where the release is void that no tender is necessary.

APPEAL from the circuit court of Lee county.

HON. CLAUDE CLAYTON, Judge.

Suit by G. M. Smith against the St. Louis & San Francisco Railroad Company and others. From a judgment for defendant on demurrer to the replication, plaintiff appeals.

The issue presented by this appeal arises upon the pleadings. Appellant at one time was a locomotive engineer employed by the St. Louis & San Francisco Railroad Company, one of the appellees herein, as one of its regular locomotive engineers, and while so employed he was run over and seriously and permanently injured by a switch engine at Amory, Miss. About one year after the accident appellant negotiated for and concluded a settlement with the railroad company, by the terms of which he accepted the sum of six thousand dollars cash, apparently in full settlement of all damages sustained by him, and as evidence of this settlement executed a full release to said railroad company. On November 7, 1914, a little more than three years after the accident, appellant brought this action for damages against appellee railroad company to recover fifty thousand dollars for the injuries alleged to have been inflicted by the negligence of the defendant. To the declaration so filed the defendant interposed the plea of general issue and special pleas of accord and satisfaction, or settlement, as reflected and evidenced by said release. The point argued here is raised on plaintiff's amended replication to the defendant's second special plea and the demurrer thereto. The court sustained the demurrer to the replication, and, plaintiff declining to plead further, judgment final was entered dismissing the cause and taxing appellant with the costs. The replication is in the words following:

"For replication to defendant's second special plea, plaintiff avers that said alleged contract of settlement, dated October 2, 1912, and said alleged release, dated

October 23, 1912, exhibited with said plea, are fraudulent and void, and have no binding force on this plaintiff, because they were entered into by the plaintiff and the said defendant the St. Louis & San Francisco Railroad Company, under the following conditions and circumstances:

"The true consideration of said alleged contract of settlement and release, was not the payment to the plaintiff alone of six thousand dollars by the said railroad company, but the large and more important consideration therefor was an agreement on the part of the said railroad company to re-employ the plaintiff as one of its locomotive engineers, the same position occupied by him at the time of his injury, such employment to begin when plaintiff had sufficiently recovered from such injuries, and to continue as to permanency under the same rules and regulations as existed prior to his said injury; and for the purpose of inducing and entrapping plaintiff (who was inexperienced in such matters, and unlearned in the law), into executing said alleged contract of settlement, including said release, the said railroad company designedly, falsely, and fraudulently represented to the plaintiff that it was not necessary to embody said contract of re-employment in said compromise settlement, and falsely and fraudulently promised plaintiff that if he would execute said papers he would be re-employed in his old position, under the same rules and regulations as to permanency as existed before his said injury, which promises and representations were false and fraudulent, and known to be such by said railroad company at the time they were made, and were made for the purpose of entrapping plaintiff into the execution of said compromise settlement, and the plaintiff, relying upon said false and fraudulent representations, executed said compromise papers, which would not have been done except for fraud.

"And the plaintiff avers that he did sufficiently recover to take back his old place of employment with the said defendants, and offered his services time and again, and continued to do so up to the time of the bringing of this suit, and in violation of said compromise settlement, as really intended and made on the part of the plaintiff, the said defendants refused plaintiff re-employment; and therefore plaintiff avers that said compromise settlement as executed and exhibited with said plea is without consideration, and was procured by fraud as aforesaid, and is null and void, all of which plaintiff is ready to verify."

The release in question bears date of October 3, 1912, is in due form and undertakes, for the consideration of six thousand dollars cash, fully to release and acquit appellee railroad company of all claims, demands, or causes of action arising from or growing out of any and all personal injuries therein stated to have been received by Mr. Smith at Amory, Miss., October 21, 1911.

*W. D. & J. R. Anderson,* for appellant.

The brief and argument on behalf of appellees is very largely based on the theory that the replication in question only avers fraud in the performance of the contract of settlement and not fraud in its procurement. We do not see how fraud in the procurement of a contract could be more plainly set out than is done in this replication. The replication charges what the fraudulent statement consisted of; that the statement was never made with the intention of being performed but for the purpose of leading the appellant into the very trap he got into. The fact that a considerable sum was paid the appellant has nothing to do with the principle involved in this case.

We submit that in view of the averments of the replication in question there is no force in the conten-

tion of counsel that this contract which was fraudulent in its inception was afterwards ratified by the appellant by his delay in bringing suit and his failure to tender back the amount of money paid him by virtue of the alleged fraudulent accord and satisfaction. The replication avers that the main consideration for the accord and satisfaction was the promise of the reemployment of the appellant when he was able to take his place back; that this promise was fraudulently made; that the railroad never intended to carry out said contract and that when the appellant had sufficiently recovered to take his job back instead of ratifying the contract as written by delay, he repudiated it by continually offering his service as an engineer to the railroad company. That the part of the replication covering this feature of the question is in this language.

"And the plaintiff avers that he did sufficiently recover to take back his old place of employment with said defendants and offered his services time and again and continued to do so up to the time of the bringing of this suit; and in violation of said compromise settlement as really intended and made on the part of plaintiff, said defendants refused plaintiff reemployment, and therefore plaintiff avers that said alleged compromise settlement as executed and exhibited with said plea is without consideration and was procured by fraud as aforesaid and is null and void."

Under the decisions of the supreme court of this state it is settled that the appellant was not required to tender back the amount paid him as the result of the alleged accord and satisfaction. He had the right to retain this as a part indemnity for the injury he had received. Now what more could he have done in order to disaffirm the contract as written than he did do. He repudiated the contract as written. The delay he persistently and continually (after he sufficiently recovered) tendered his services to the railroad com-

pany in accordance with the contract as intended. We submit that the. appellant could have gone on in this attitude without bringing suit for any length of time short of the period limited by the statute of limitations. The principle we contend for in this case is recognized by several of the leading authorities cited by opposing counsel in his brief. We shall now quote from some of these authorities. In the case of *Laird* v. *Union Traction Co.*, 57 Atl. 987, the court said:

"Besides, there being no fraud in obtaining the release, the plaintiff ratified it by using the money weeks after with full knowledge of where it came from and made an offer to return it before bringing suit."

We ask, suppose there had been fraud practiced in obtaining the releases,. would there have been a ratification by the delay? In *Chicago, St. Paul & K. C. Ry. Co.* v. *Pierce*, 64 Fed. 293, the court said in part: "Plaintiff was a person in the prime of life. The contract was a valid and binding contract, provided there was no fraud and she had the mental capacity at the time to make it."

In *Gibson* v. *Wnyp. Ry. Co.*, 30 Atl. 308, the court said: "It was his duty, when he first learned of the existence of the release, to disallow it, and at least, before suit was brought, return or offer to return the money received under it, for it is not pretended any fraud was practiced upon him in obtaining the release. In its worst aspect that was executed when those acting for the company were wholly ignorant of the incapacity which is now alleged to have existed. When there is a disaffirmance of the contract caused by fraud, the injured party may, in some cases, bring his action without repaying or offering to repay the money received on the fraudulent contract. In such cases the money is retained, not as part of the consideration of the contract he denies, but as indemnity for the fraud perpetrated upon him. As he was deceived by falsehood or fraud there is no admission that it was a con-

sideration for the contract, and there is consequently
no obligation on him to return it.''

We submit that this is the very case made by the
replication here in question. *Pawnee Coal Co.* v. *Royce,*
56 N. E. 621; *Babcock* v. *Farwell,* 245 Ill, 14, p. 40;
*St. Louis & San Francisco R. R. Co.* v. *McCrory*
(Ala.), 56 So. 82.

We submit that the principle announced in this case
covers the case in hand. However in Alabama the rule
is different from that in Mississippi as to the necessity
of returning or offering to return the consideration of
the settlement before suit is brought.

*J. W. Canada,* for appellees.

Learned opposing counsel have confused the dif-
ference between fraud going to the execution of a con-
tract, and fraud going to the procurement, inducement,
or consideration. Fraud which goes to the procure-
ment, inducement, or consideration, renders it voidable
only. Where one of the parties is *non compos mentis,*
from shock, injury, drugs, anesthetics, fright, or other
causes and while in that condition a release is secured,
and an alleged settlement made such a release or settle-
ment is absolute void, for the reason that the party
signing it did not possess the capacity to contract, and
no contract ever came into being, therefore.

As stated in *Railway* v. *Lewis,* 109 Ill. 120, at page
131: ''If the release was obtained by fraud at a time
when plaintiff was incapacitated to contract, it was
absolutely void from the beginning.''

Or, where a party sign a settlement in full, upon
the representation and with the belief that it is simply
a receipt for expense money, and medical expenses, the
relapse is absolutely void, because the party did not
consciously sign a full release. So there never was
a contract. There never was a meeting of the minds.
The first essential of a contract was wanting. It was,
therefore, absolutely void.

But where the party knows the nature and character of the paper he is signing—is possessed of all of his faculties—howsoever false and fraudulent the representations contained therein may be, the contract is voidable only. The party injured may rescind by a return of the fruits thereof.

In *Laird* v. *Union Traction Co.*, 7 Atl. 987, it was claimed that: "the plaintiff was prostrated and unconscious from his injury, and, therefore, was incapable of executing a valid release." (p. 987). The court found to the contrary, but implied that if such was the fact there had been a ratification.

In *C. St. Paul, et al.* v. *Pierce*, 64 Fed. 293, quoted by opposing counsel, the plaintiff contended that: "At the time of the execution of the release she was suffering from great agony of body and mind to such an extent that she was wholly deprived of her reasoning powers, and in condition which rendered her unfit and incapable of contracting, etc." (p. 294).

And then the court later added: "But allowing that she had not such capacity, as the jury must have found, still, after she had recovered her health and usual mental condition so as to render her capable of comprehending the settlement, she was bound either to affirm or disaffirm, etc." (p. 296).

So that case is authority of the proposition that even an absolutely void release could be ratified.

In the case of *Gibson* v. *Railway Co.*, 30 Atl. p. 308, also quoted by opposing counsel the court said (p. 310): "There is, however, the positive oath of the plaintiff that, from the effects of the anesthetic his intellectual faculties were in a state of paralysis, so complete that he had no knowledge of the contents of the paper or that he was signing any instrument whatever. If this were the fact then it could not bar his recovery any more than if it had no existence." It is that kind of fraud the court was speaking of.

In the case of *Pawnee Coal Co.* v. *Royce,* 56 N. E. 621, immediately following the first paragraph of the quotation cited by opposing counsel, the court quoting with aproval from *Railway* v. *Lewis.* 109 Ill. p. 131, said: "If the release was obtained by fraud at a time when plaintiff was incapacitated to contract, it was absolutely void from the beginning, as between the parties, and will stand in the way of the assertion of no right by the party defrauded."

In other words, it was that sort of fraud (fraud going to the execution of the contract) that the court referred to as fraud that would obviate a return of the money.

And in the case of *Babcock* v. *Farwell,* 245 Ill. 10, immediately following the paragraph quoted by opposing counsel, the court said: "The doctrine (that the money need not be refunded in case of fraud going to the execution of the release) has no application to a case where there was fraud only in the consideration, as where the party knew that he was executing a release, but was induced to do so by the false representations of the other party as to matters other than the character of the instrument. In this latter case the release so obtained is not void, but voidable only."

This case makes quite clear the difference between fraud going to the execution of a contract, which renders it void, and fraud going to the consideration, inducement, or procurement, which renders it voidable only.

In the case of *Railroad* v. *McCrory,* 56 So. 822, immediately following the paragraph quoted by opposing counsel, the court added: "He who rescinds a contract for fraud must make speedy restitution to the party by whom he was defrauded of anything received by him under the contract, as it is the duty of the party seeking a rescission to put his adversary in the same position, as far as possible, that he occupied when

the contract was made. He cannot hold to the fruits of a contract with the other.'' (p. 824).

This is exactly what the plaintiff seeks to do in this case.

STEVENS, J., delivered the opinion of the court.

(After stating the facts as above). This case has been well argued and briefed, and the conclusions we have reached from a consideration of the legal questions presented lead to an affirmance of the judgment entered by the trial court. The pleadings show that appellant does not deny, but, on the contrary, affirms, the existence of the written release. This contract of settlement was entered into about one year after the injury complained of, bears the signature of appellant, and is conceded to be the contract, at least so far as it goes. As we understand the argument of counsel for appellant, the position is taken that, because of the averments of the replication that Mr. Smith was induced to sign the contract of settlement by verbal representations of appellees' agents to the effect that Mr. Smith would be re-employed as an engineer whenever he became physically able to resume his job, and because, further, Smith had now become able to work, and appellee had declined to give him back his job, and because these verbal representations about re-employment are charged to have been wilfully and knowingly false at the time they were made, Mr. Smith as a party to this written contract, has a right now to ignore the full release and acquittance executed by him and to sue on the original cause of action. As stated, appellant does not deny his signature to the instrument, does not aver that the contract expressly contains stipulations not agreed to, does not charge any mis-recitals of fact in the document, but concedes the correctness of the recitals so far as they go. He does not charge that this contract was signed at a time when he

was suffering from pain or when his mental faculties were weakened or impaired or his brain befuddled by opiates. The case is entirely different from those cases relied upon by appellant and holding that under some circumstances the injured party has a right to ignore the contract, retain the fruits of the settlement, and sue on the original cause of action. It is certainly different from the case of *Jones* v. *A. & V. R. R. Co.*, 72 Miss. 22, 16 So. 379; *St. Louis & S. F. R. Co.* v. *Ault*, 101 Miss. 341, 58 So. 102; *K. C. M. & B. Ry. Co.* v. *Chiles*, 86 Miss. 361, 38 So. 498. In each of the cases mentioned there was the element of "indecent haste," undue influence, and oppression. There was evidence in those cases tending to prove and fully warranting the jury in finding that the minds of the parties had not met and that there was no binding contract at all. The hand of fraud had written the plaintiff's signature to the so-called release. When the plaintiff in each case "came to himself," he realized that all his physical injuries, sufferings, and impaired efficiency caused by the negligence of the railroad company had been apparently sold by him for a mess of pottage. The signature of the injured party, so hastily and improvidently attached to the written release, confronted the plaintiff, but the document so signed and executed did not speak the deliberate agreement of a healthy mind. The so-called release, in the judgmnt of our court, was no contract at all. There was no tender of the small pittance received by the plaintiff in those cases as the fruits of the settlement and no tender was necessary. But in each case the contract was absolutely void. As reaffirmed by our court in the *Ault Case, supra.* "If the release was void, no tender was necessary." Therein lies the difference between those cases and the instant case. The release in the present case is not void. It may be voidable in a court of equity, but no issue seeking cancellation on the ground of fraud or of mistake is here presented. The plaintiff in this case

has instituted action upon the original cause of action
and ignored the release. He has not tendered back the
fruits of the settlement, and does not offer to do so.
The amount of the settlement in this case is not in-
significant, but is the substantial sum of six thousand
dollars. The chief injuries sustained by Mr. Smith was
the loss of a foot and serious injury to the other. He
yet has some earning capacity, as evidenced by his
offer to return to appellee's employment. For all this
court may know the jury in assessing damages for the
injuries inflicted might not award the plaintiff the
full sum of six thousand dollars. The settlement was
entered into deliberately, and no fiduciary relation-
ship existed between appellant and those with whom
he was negotiating. He had full opportunity in the
year's time in which to reflect over the extent of his
injuries and to figure the amount he should claim. In
doing so he had full opportunity to consult or advise
with his friends and the best of legal talent. He does
not even complain of the misrepresentation of an
existing fact at the time the settlement was entered in-
to, but relies upon a collateral, contemporaneous oral
agreement about re-employment in the future. This,
in our judgment, is not sufficient to render the contract
void, and to so hold would render nugatory the many
written contracts of settlement deliberately and in good
faith entered into by the injured with railroad com-
panies and others whose negligence is brought in ques-
tion. Such holding would obstruct the way to peaceful
settlements and encourage litigation. Instead of return-
ing or offering to return the fruits of the settlement
in this case, appellant has kept and used the money and
apparently ratified the contract. If authority is neces-
sary in support of the position we here take, the cases
are abundantly collated in the brief of appellees.

*Affirmed.*