# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

January 16, 2008

Charles R. Fulbruge III
Clerk

No. 06-60308

BARBARA HAFFEY BOGY, Individually and As Mother and Next Friend of Thomas P. Haffey, a Minor; MOLLIE HAFFEY CALDWELL; JAMES L. HAFFEY, JR.,

Plaintiffs–Appellants,

v.

FORD MOTOR COMPANY, ET AL

Defendants,

FORD MOTOR COMPANY,

Defendant–Appellee.

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 5:01-CV-116

Before KING, WIENER, and OWEN, Circuit Judges.

PRISCILLA R. OWEN, Circuit Judge:

In this diversity case, the plaintiffs contend that they are entitled to pursue damages arising from claims they released in settlement of a prior wrongful death suit because the settlement agreement was induced by fraud. The district court granted summary judgment for the defendants, concluding that the plaintiffs had failed to rescind the settlement agreement and return the proceeds they had received under it, as required by Mississippi law. We affirm.

I

James Haffey was killed in a single vehicle rollover accident involving his Ford Explorer equipped with Firestone tires. His survivors brought a wrongful death suit against Ford Motor Company, which the parties settled in May 1999. As part of the settlement agreement, the plaintiffs executed a "Receipt, Release, and Indemnification Agreement" that purports to release Ford from any and all claims the plaintiffs have or may have against Ford resulting from the underlying accident. The agreement also states:

> Plaintiffs expressly waive and assume the risk of any and all claims for damages which exist as of this date, but of which the Plaintiffs do not know or suspect to exist, whether through ignorance, oversight, error, negligence, or otherwise, and which, if known would materially affect Plaintiffs' decision to enter into this . . . Agreement. Plaintiffs . . . assume the risk that the facts or law may be other than what Plaintiffs believe.

Nearly two years later, the plaintiffs filed the present suit, alleging that Ford made false statements and representations during discovery in the prior wrongful death suit, and that these misrepresentations induced the plaintiffs to settle for less than they would have if Ford had been truthful. Ford filed a motion for summary judgment, claiming that the plaintiffs cannot prove fraud because the plaintiffs have admitted that they did not rely on Ford's discovery responses and deposition testimony in settling the prior wrongful death action. Ford also filed a motion for summary judgment on alternative grounds, arguing that Mississippi law requires that plaintiffs seeking a greater recovery for previously settled and released claims must first ask the court to set aside the settlement agreement and then try the claims as if there had never been a settlement. The district court granted the motion for summary judgment, concluding that Mississippi law requires a plaintiff to rescind a prior settlement

2

agreement and return the proceeds before pursuing damages arising from the claims that were released in the initial suit.

## II

The parties agree that Mississippi law governs this case. The Mississippi Supreme Court held in Turner v. Wakefield that "a contract obligation obtained by fraudulent representation is not void, but voidable. Upon discovery thereof, the one defrauded must act promptly and finally to repudiate the agreement; however, a continuance to ratify the contract terms constitutes a waiver."[1] More recently, in Telephone Man, Inc. v. Hinds County, the Mississippi Supreme Court similarly held that "[u]nder Mississippi law, where a written contract is procured by fraud committed by one party on another, the defrauded party may come forward, show the true facts, and avoid the contract. . . . This option is available to the defrauded party because no contract exists that is procured [by] legal fraud."[2]

The plaintiffs in this case have not acted "promptly and finally to repudiate" the settlement agreement. To the contrary, they contend that they are entitled to retain the payments they received, pursue an action for the "true" value of their prior wrongful death action, and "credit" the settlement payments against their recovery in the second action. Not only is this argument illogical, since it is not certain they would prevail in a second suit or that they would recover damages in excess of what they received in settlement, but Mississippi law forecloses such a strategy:

> If one elects to affirm the agreement, after full knowledge with the truth respecting the false and fraudulent representation, and thereafter continues to carry it out and receive its benefits, he may

---

[1] 481 So.2d 846, 848-49 (Miss. 1985).

[2] 791 So.2d 208, 210-11 (Miss. 2001) (citations omitted).

not thereafter maintain an action in damages for deceit, because this would constitute a ratification of the agreement and condemnation of the fraud; otherwise one might, with knowledge of fraud, speculate upon the advantages or disadvantages of an agreement, receive its benefits, and thereafter repudiate all its obligations.[3]

The plaintiffs rely on 1912 decision from the Mississippi Supreme Court, St. Louis & S.F.R. Co. v. Ault, in which a railroad employee was injured and accepted $50.00 from the railroad while "in the hospital of the railway company" in settlement of any claim he may have had.[4] The Mississippi court rejected the railroad's argument that the plaintiff was required to repay the $50.00 or offer to do so before setting aside the release, holding that "'all that is necessary is that the jury, in case a verdict should be found for plaintiff, should credit any amount they may find with the money paid plaintiff by defendant and legal interest thereon.'"[5] It is clear the court was influenced in its decision by the circumstances of the case, including the paucity of the settlement amount and the circumstances under which the employee signed the release.[6] Whatever

---

[3] Turner, 481 So.2d at 848 (quoting Stoner v. Marshall, 358 P.2d 1021, 1023 (Colo. 1961)).

[4] 58 So. 102, 104 (Miss. 1912).

[5] Id. (quoting Jones v. R.R. Co., 16 So. 379 (1894)).

[6] Id. ("The evidence in this case clearly and indisputably shows that the most shameful imposition was practiced upon appellee by the railroad company and its employés, in making the alleged settlement and in procuring Ault to sign the releases. Without entering into a full recital of the facts, it is sufficient to say that at the time Ault signed this release and accepted the pitiful sum of $50 in settlement of the injuries received by him he was in the hospital of the railway company, at St. Louis, hundreds of miles away from his family and friends and advisers, surrounded by the paid employés of the railway company, almost a monomaniac upon the subject of once more obtaining employment with the railway company; and the assurances from the claim agent that the sum accepted and the release signed by him only related to the slight injury received on the leg are enough to demonstrate the imposition and fraud practiced upon this mentally weak and helpless individual. In addition, the claim agent had Ault to write in this release, 'I understand this release.' This brings forcibly to mind the act of the

vitality this line of cases involving releases obtained by railroads from their injured employees may have had, more recent Mississippi decisions have not relied upon or carried forward this law.

We AFFIRM the district court's judgment.

---

thief, who, in order to throw off suspicion, hurried down the street, exclaiming 'Stop, thief!'").