IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

July 31, 2008

No. 06-60308

Charles R. Fulbruge III
Clerk

BARBARA HAFFEY BOGY, Individually and As Mother and Next Friend of Thomas P. Haffey, a Minor; MOLLIE HAFFEY CALDWELL; JAMES L. HAFFEY, JR.,

Plaintiffs–Appellants,

v.

FORD MOTOR COMPANY, ET AL,

Defendants,

FORD MOTOR COMPANY,

Defendant–Appellee.

Appeal from the United States District Court
for the Southern District of Mississippi

Before KING, WIENER, and OWEN, Circuit Judges.

PRISCILLA R. OWEN, Circuit Judge:

On petition for rehearing, we withdraw the opinion issued January 16, 2008, and substitute the following opinion.

In this diversity case, the plaintiffs contend that they are entitled to pursue damages arising from a settlement agreement induced by fraud pursuant to which they released wrongful death claims against Ford Motor Company. The district court granted summary judgment in favor of Ford, concluding that under Mississippi law the plaintiffs were required but had failed to rescind the

settlement agreement and return the proceeds they had received under it. We reverse and remand.

I

James Haffey was killed in a single vehicle rollover accident involving his Ford Explorer equipped with Firestone tires. His survivors brought a wrongful death suit against Ford, which the parties settled in May 1999. As part of the settlement agreement, the plaintiffs executed a "Receipt, Release, and Indemnification Agreement" that purports to release Ford from any and all claims the plaintiffs have or may have against Ford arising from the underlying accident.

Nearly two years later, the plaintiffs filed the present suit in Mississippi state court, and Ford removed to federal district court. The Judicial Panel on Multi-district Litigation transferred the case to the United States District Court for the Southern District of Indiana, and the plaintiffs filed an amended complaint in which they alleged that Ford made false statements and representations during discovery in the prior wrongful death suit, and that these misrepresentations induced the plaintiffs to settle for less than they would have if Ford had been truthful.

Ford filed a motion for summary judgment, claiming that the plaintiffs cannot prove fraud because the plaintiffs have admitted that they did not rely on Ford's discovery responses and deposition testimony in settling the prior wrongful death action. Ford also filed a motion for summary judgment on alternative grounds, arguing that Mississippi law requires that plaintiffs seeking a greater recovery for previously settled and released claims must first ask the court to set aside the settlement agreement and then try the claims as if there had never been a settlement. The MDL panel remanded the case to the Southern District of Mississippi, and the district court granted Ford's alternative

2

motion for summary judgment, concluding that Mississippi law requires a plaintiff to rescind a prior settlement agreement and return the proceeds before pursuing damages arising from the claims that were released in the initial suit.

II

The parties agree that Mississippi law governs this case. The district court relied on the Mississippi Supreme Court's decision in Whittington v. H.T. Cottam Co., in which the injured plaintiff signed a release but later asserted that when he did so, "he was suffering intense physical and mental pain and was under the influence of opiates and was incapable of executing the release."[1] However, after he recovered and "was in his right mind," he found on his bedside table a $500 check that the defendant had given as consideration for the release, and he accepted the check.[2] The Mississippi court held that the plaintiff's failure "within a reasonable time, to notify the appellee that he would refuse to accept the $500 in satisfaction and accord . . . amounted to an irrevocable ratification of the settlement."[3] In the present case, the settlement occurred in May 1999, and the plaintiffs contend they did not know of Ford's allegedly fraudulent misstatements and misrepresentations until widespread publicity regarding the Ford Explorer rollovers and the involvement of Firestone tires occurred in August 2000, after the settlement agreement had been fully performed. The plaintiffs filed suit in March 2001. The plaintiffs contend that these facts distinguish their situation from that of the injured plaintiff in Whittington.

We agree that the settlement agreement here is no longer executory, as was the case in Whittington, but we have been unable to find Mississippi law

---

[1] 130 So. 745, 746-47 (Miss. 1930).

[2] Id. at 748.

[3] Id.

3

that is directly applicable when the contract at issue is a settlement of a lawsuit. The plaintiffs rely on the Mississippi Supreme Court's 1912 decision in St. Louis & S.F.R. Co. v. Ault, in which a railroad employee was injured and accepted $50.00 from the railroad while "in the hospital of the railway company" in settlement of any claim he may have had.[4] The Mississippi court rejected the railroad's argument that the plaintiff was required to repay the $50.00 or offer to do so before setting aside the release, holding that "'all that is necessary is that the jury, in case a verdict should be found for plaintiff, should credit any amount they may find with the money paid plaintiff by defendant and legal interest thereon.'"[5] It is clear the court was influenced in its decision by the circumstances of the case, including the paucity of the settlement amount and the circumstances under which the employee signed the release.[6] More recent Mississippi decisions have not relied upon or carried forward this law.

With regard to contracts generally, the Mississippi Supreme Court observed in Turner v. Wakefield that the defrauded party "has an election to either rescind, in which event he must tender back that which he has received,

---

[4] 58 So. 102, 104 (Miss. 1912).

[5] Id. (quoting Jones v. Ala. & Vicksburg Ry. Co., 16 So. 379, 382 (Miss. 1894)).

[6] Id. ("The evidence in this case clearly and indisputably shows that the most shameful imposition was practiced upon appellee by the railroad company and its employés, in making the alleged settlement and in procuring Ault to sign the releases. Without entering into a full recital of the facts, it is sufficient to say that at the time Ault signed this release and accepted the pitiful sum of $50 in settlement of the injuries received by him he was in the hospital of the railway company, at St. Louis, hundreds of miles away from his family and friends and advisers, surrounded by the paid employés of the railway company, almost a monomaniac upon the subject of once more obtaining employment with the railway company; and the assurances from the claim agent that the sum accepted and the release signed by him only related to the slight injury received on the leg are enough to demonstrate the imposition and fraud practiced upon this mentally weak and helpless individual. In addition, the claim agent had Ault to write in this release, 'I understand this release.' This brings forcibly to mind the act of the thief, who, in order to throw off suspicion, hurried down the street, exclaiming 'Stop, thief!'").

4

or he may affirm the agreement, and maintain his action in damages for deceit, but his election must be promptly made."[7]  It is clear from the plaintiffs' amended complaint in this case that they seek to affirm the settlement agreement and maintain an action in damages for deceit.  But, as we have said, it is unclear how the Mississippi courts would treat a settlement agreement releasing all present and future claims arising out of the automobile accident. We therefore must make an Erie[8] guess.

Courts in other jurisdictions are divided over the question of whether a plaintiff must rescind and tender any amounts received in settlement before pursuing a damage claim for fraudulent inducement of the settlement agreement.[9]  Although there are difficult issues with respect to both approaches, on balance, our best Erie guess is that the Mississippi courts would treat a settlement agreement the same as other contracts.

We express no opinion as to the effect, if any, of the language in the settlement agreement regarding promises, warranties or representations. That issue is not before us.  Ford urges us to affirm the district court's summary

---

[7] 481 So.2d 846, 848 (Miss. 1985).

[8] Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938).

[9] Compare Matsuura v. Alston & Bird, 166 F.3d 1006, 1008 (9th Cir. 1999) (applying Delaware law and concluding that "plaintiffs who have been fraudulently induced to settle tort claims" "may rescind the contract or they may affirm the contract and sue for fraud"), Turkish v. Kasenetz, 27 F.3d 23, 28 (2d Cir. 1994) (holding that a party may ratify a settlement agreement induced by fraud, retain the proceeds, and sue to recover fraud damages), Exotics Hawaii-Kona, Inc. v. E.I. Du Pont De Nemours & Co., 172 P.3d 1021, 1033-35 (Haw. 2007) (same), Phipps v. Winneshiek County, 593 N.W.2d 143, 145-46 (Iowa 1999) (same), and Roth v. La Societe Anonyme Turbomeca France, 120 S.W.3d 764, 771-76 (Mo. Ct. App. 2003) (same), with Taylor v. Hopper, 276 P. 990, 991-92 (Cal. 1929) (holding that a plaintiff must rescind a settlement and return the consideration received thereunder before brining a suit for fraud), and Shallenberger v. Motorists Mut. Ins. Co., 150 N.E.2d 295, 300 (Ohio 1958) (holding that "[t]o allow the releasor to recover more than anyone agreed to give for his tort claim, because the releasor was induced by fraud to believe that claim was worth less than its value . . . he must set aside, not affirm, his agreement not to sue for those personal injuries.").

5

judgment on other grounds, including the effect of the order dismissing the original suit against Ford with prejudice.  Although we have the authority to consider grounds presented to but not ruled upon by the district court, we decline to do so because the plaintiffs did not address the various other grounds in their briefing, and we think the better course is for the district court to address those issues in the first instance.[10]

*     *     *

We REVERSE the district court's judgment and remand for further proceedings.

---

[10] See generally Betzel v. State Farm Lloyds, 480 F.3d 704, 709 (5th Cir. 2007); United States ex rel. Riley v. St. Luke's Episcopal Hosp., 355 F.3d 370, 380 (5th Cir. 2004); Breaux v. Dilsaver, 254 F.3d 533, 537-38 (5th Cir. 2001).