**Barbara Haffey BOGY, Individually and as Mother and Next Friend of Thomas P. Haffey, a Minor, Mollie Haffey Caldwell, and James L. Haffey, Jr., Plaintiffs**

v.

**FORD MOTOR COMPANY; Bridgestone/Firestone, Inc.; and Killens Motor, Inc., Defendants.**

Civil Action No. 5:01–cv–116–WHB–JMR.

United States District Court, S.D. Mississippi, Jackson Division.

Nov. 9, 2011.

Pat M. Barrett, Jr., Barrett Law Offices, Lexington, MS, C. Tab Turner, Turner & Associates, PA, North Little Rock, AR, Hugh M. Love, Jr., Bridgforth, Love & Norquist, Yazoo City, MS, for Plaintiffs.

Walker W. Jones, III, Barry Wayne Ford, Bradley W. Smith, Everett E. White, Baker, Donelson, Bearman, Caldwell & Berkowitz, PC, Jackson, MS, for Defendants.

### OPINION AND ORDER

WILLIAM H. BARBOUR, JR., District Judge.

This cause is before the Court on the Motion of Ford Motor Company for Summary Judgment. Having considered the Motion, Response, Rebuttal, supplemental pleadings, the attachments to the pleadings, as well as supporting and opposing authorities, the Court finds the Motion is not well taken and should be denied.

### I. Factual Background and Procedural History

On August 4, 1997, Plaintiff, Barbara Haffey Bogy ("Bogy"), was driving a 1994 Ford Explorer, XLT, that had been manufactured by Defendant, Ford Motor Company ("Ford"). The vehicle was equipped with four Firestone Radial ATX tires manufactured by Defendant, Bridgestone/Firestone, Inc. ("Firestone"). According to Bogy, while driving the Explorer on Mississippi Interstate 55, the tread-ply of the

right rear tire separated from the rest of the tire, causing her to lose control of the vehicle. The vehicle was subsequently involved in a roll-over incident that claimed the life of her husband, James Haffey, who had been riding in the front passenger seat.

On January 9, 1998, Bogy filed a lawsuit against Ford, Firestone, and Killens Motor, Inc. ("Killens"), the dealership that originally sold the subject Explorer, in the Circuit Court of Yazoo County, Mississippi, ("*Bogy I*"), alleging claims of strict liability, failure to warn, negligence, and negligent infliction of emotional distress. Prior to the trial of *Bogy I,* Bogy settled her claims against Ford and Killens. As part of the settlement, the settling parties executed a Receipt, Release and Indemnification Agreement ("Agreement"), which provides, in relevant part:

> Plaintiffs and Defendants desire to enter into this ... Agreement and to therefore arrive at a full settlement and discharge of all claims which are or might have been the subject matter of the Lawsuit, pursuant to the terms and conditions set forth below.
>
> In consideration of the payment ... Plaintiffs hereby forever compromise, release, acquit and discharge[ ] Defendants [Ford and Killens] ... (the "Released Parties") from any and all claims that Plaintiffs have or may have against the Released Parties for property damage, personnel injury, medical expenses, loss of wages, recovery of medical benefits ... and/or any other damages of whatever nature or kind, or any other claim whatsoever relating to, or arising out of, an automobile accident which occurred on or about August 4, 1997.... The compromised and settled claims include, but are not limited to, the matters asserted against the Released Parties in [*Bogy I* ].

> This Agreement, on the part of the Plaintiffs, shall be a fully binding and complete settlement among the Plaintiffs ... and [the Released Parties].
>
> Plaintiffs acknowledge and agree that the release and discharge set forth above is a general release. Plaintiffs expressly waive and assume the risk of any and all claims for damages which exist as of this date but of which the Plaintiffs do not know or suspect to exist, whether through ignorance, oversight, error, negligence, or otherwise, and which, if known, would materially affect Plaintiffs' decision to enter into this [Agreement]. Plaintiffs further agree that Plaintiffs have accepted payment ... as a complete compromise of matters involving disputed issues of fact and law. Plaintiffs assume the risk that the facts or law may be other than what Plaintiffs believe. It is understood and agreed to by the parties that this settlement is a compromise of a doubtful and disputed claim, and the payments are not to be construed as an admission of liability of the part of the Released Parties. On the contrary, any and all liability on the part of the Released Parties is expressly denied.
>
> In entering into this [Agreement], the Plaintiffs represent that Plaintiffs have relied upon the advise of their attorneys ... concerning the legal ... consequences of this [Agreement]; that the terms of this [Agreement] have been completely read and explained to the Plaintiffs by their attorneys; and that the terms of this [Agreement] are fully understood and voluntarily accepted by the Plaintiffs.
>
> This [Agreement] shall be construed and interpreted in accordance with the laws of the state of Mississippi.

On May 18, 1999, following execution of the Agreement, an Order was entered in *Bogy I*, which provides, in relevant part:

Plaintiffs have entered into valid and binding settlement agreements with all defendants in [this] action.

All claims that plaintiffs have, or may have, against defendants arising from the accident on August 4, 1997, which forms the basis of this action, are forever extinguished and barred.

Plaintiffs' motion to dismiss this cause is well-taken and should be granted.

IT IS THEREFORE, ORDERED AND ADJUDGED that this cause be, and it hereby is, dismissed with prejudice, with each party bearing their own costs.

On March 22, 2001, Plaintiffs filed a second lawsuit against Ford, Firestone, and Killens in the Circuit Court of Yazoo County, Mississippi ("*Bogy II*"). In *Bogy II*, which is the lawsuit currently before the Court, Plaintiffs alleged, *inter alia:*

Plaintiffs have learned only recently that substantial portions of Firestone's discovery responses and [the deposition testimony of it's expert James Gardner] were false, that Firestone misrepresented facts, negligently and/or intentionally, upon which misrepresentations plaintiffs relied in deciding to settle [*Bogy I* ]. Recently acquired information clearly shows that these settlements were for far less than the actual value of the case at the time of the settlements. If plaintiffs had received truthful discovery responses and deposition testimony from Firestone, they never would have settled for the amounts they did. The actual settlement value of the case as alleged in [*Bogy I* ] was $10,000,000.00; therefore, plaintiffs have been damaged by the difference between the actual settlement value and the gross amount of the settlement they were fraudulently induced to make. The difference is in excess of $9,000,000.00.

At all material times, all three defendants were acting in concert. Ford and Killens ... actually knew that critical portions of Firestone's discovery responses and deposition testimony were false, yet failed to disclose this information to plaintiffs and acquiesced in said deception. Each defendant ratified the conduct of the other concerning pre-trial discovery.

Based on these allegations, Plaintiffs request compensatory damages in excess of $9,000,000.

*Bogy II* was removed to federal Court on the basis of diversity jurisdiction/fraudulent joinder and was subsequently. transferred to the United States District Court for the Southern District of Indiana by the Judicial Panel on Multidistrict Litigation. The District Court of Indiana denied Plaintiffs' motion to remand, and dismissed both Killens and Firestone from the lawsuit. While in MDL, Ford filed a motion seeking summary judgment on the following grounds:

Plaintiffs already released the claims being asserted, including claims that the facts were different than Plaintiffs believed them to be, and disclaimed reliance on any representations by Ford or Firestone;

Plaintiffs' claims arise out of the same subject matter, facts and circumstances as their prior action and are barred by the prior judgment dismissing that action with prejudice;

Plaintiffs admittedly did not rely on the truth of Ford or Firestone's discovery responses and deposition testimony in settling the prior action and, in fact, disputed them at the time; and

Plaintiffs did not file this action promptly upon discovery of the alleged fraud as required by Mississippi law.

Ford supplemented its motion for summary judgment to include the additional argument that the claims in *Bogy II* were

barred because Mississippi law would not allow Plaintiffs to recover additional damages while retaining the proceeds from the prior settlement agreement.

After the case was transferred back to this Court from MDL, this Court granted Ford summary judgment on the ground argued in its supplemental motion, i.e. that Plaintiffs could not "retain the monetary benefit of the settlement of the initial suit without risk of losing it, and seek to achieve further monetary gain by pursuing the exact claims that were released in the initial suit." The decision was reversed on appeal upon an *Erie* guess that Mississippi courts "would treat a settlement agreement the same as other contracts" thereby allowing the alleged defrauded party to "elect[ ] to either rescind [the agreement], in which event he must tender back that which he has received, or he may affirm the agreement, and maintain his action in damages for deceit." *Bogy v. Ford Motor Co.,* 538 F.3d 352, 355 (5th Cir.2008).

The case was thereafter remanded, and Ford re-urged the other grounds that had been raised in its initial Motion for Summary Judgment. Following the filing of supplemental briefs, the Court now considers these other grounds.

## II. Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure provides, in relevant part, that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The United States Supreme Court has held that this language "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see also, Moore v. Mississippi Valley St. Univ.,* 871 F.2d 545, 549 (5th Cir. 1989).

The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record in the case which it believes demonstrate the absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548. The movant need not, however, support the motion with materials that negate the opponent's claim. *Id.* As to issues on which the non-moving party has the burden of proof at trial, the moving party need only point to portions of the record that demonstrate an absence of evidence to support the non-moving party's claim. *Id.* at 323–24, 106 S.Ct. 2548. The non-moving party must then go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." *Id.* at 324, 106 S.Ct. 2548.

Summary judgment can be granted only if everything in the record demonstrates that no genuine issue of material fact exists. It is improper for the district court to "resolve factual disputes by weighing conflicting evidence, . . . since it is the province of the jury to assess the probative value of the evidence." *Kennett–Murray Corp. v. Bone,* 622 F.2d 887, 892 (5th Cir. 1980). Summary judgment is also improper where the court merely believes it unlikely that the non-moving party will prevail at trial. *National Screen Serv. Corp. v. Poster Exchange, Inc.,* 305 F.2d 647, 651 (5th Cir.1962).

## III. Discussion

### A. Claims Barred by Prior Settlement Agreement

In support of its Motion for Summary Judgment, Ford argues that the

fraudulent inducement claim asserted in *Bogy II* is barred by the express terms of the Agreement that was entered by the parties in *Bogy I*. Relevant to this argument, a settlement agreement is treated as a contract under Mississippi law. *See e.g. McManus v. Howard,* 569 So.2d 1213, 1215 (Miss.1990). When interpreting a contract, a court first determines, as a matter of law, whether it is ambiguous. *See Royer Homes of Miss., Inc. v. Chandeleur Homes, Inc.,* 857 So.2d 748, 751 (Miss. 2003). If the contract is found to be unambiguous, it must be enforced as written. *Mississippi Transp. Comm'n v. Ronald Adams Contractor, Inc.,* 753 So.2d 1077, 1087 (Miss.2000). If the contract is found to be ambiguous, or if its terms are subject to more than one reasonable interpretation, "the subsequent interpretation presents a question of fact for the jury." *Royer Homes,* 857 So.2d at 752.

■ Ford first argues that the fraudulent inducement claim alleged in *Bogy II* is barred under the following provision in the Agreement:

> Plaintiffs hereby forever compromise, release, acquit and discharge[ ] Defendants [Ford and Killens] . . . (the "Released Parties") from any and all claims that Plaintiffs have or may have against the Released Parties for property damage, personnel injury, medical expenses, loss of wages, recovery of medical benefits . . . and/or any other damages of whatever nature or kind, or any other claim whatsoever relating to, or arising out of, an automobile accident which occurred on or about August 4, 1997. . . .

*See* Mot. for Ruling [Docket No. 41], Ex. 5 (Agreement), at ¶ 1.1. Under this provision, as interpreted by the Court, Plaintiffs expressly agreed to release Ford from any and all claims they had or may have had in *Bogy I* for damages relating to, or arising out of, the underlying automobile accident. In the case *sub judice,* however, Plaintiffs do not seek damages resulting from the underlying accident but, instead, seeks damages arising from the fraud that was allegedly perpetrated, and on which Bogy allegedly relied, prior to her having executed the Agreement. Accordingly, the Court cannot conclude, as a matter of law, that the fraudulent inducement claim in *Bogy II* is barred by the express terms of the cited provision. Additionally, the Court finds that the cited provision is ambiguous in that it is unclear whether claims regarding the settlement agreement would relate to, or arise out of, the underlying automobile accident for the purposes of release/waiver under the provision. As the Court finds the provision is ambiguous, its interpretation presents a question for the jury. *See Royer Homes,* 857 So.2d at 752. Accordingly, the Court finds Ford is not entitled to summary judgment on this basis.

■ Ford next argues that the fraudulent inducement claim alleged in *Bogy II* is barred because, under the Agreement, Plaintiffs in *Bogy I* "expressly waived and assumed the risk of any and all claims for damages", which existed as of the date the Agreement was entered, "but of which the Plaintiffs did not know or suspect to exist, whether through ignorance, oversight, error, negligence, or otherwise, and which, if known, would have materially affected their decision to enter into the Agreement." *See* Mot. for Ruling at 16 (quoting Ex. 5, at ¶ 1.5). Ford additionally argues that the fraudulent inducement claim is barred because Plaintiffs in *Bogy I* expressly agreed that they were not relying on any representations at the time the Agreement was entered. *Id.* (citing Ex. 5, at ¶ 11.0). The Court finds these arguments do not appear to be supported by Mississippi law.

In *Brown v. Ohman,* 42 So.2d 209, 214 (Miss.1949), the Mississippi Supreme

Court discussed, with approval, the case of *Jordan v. Nelson,* 178 N.W. 544, 548 (Iowa 1920). In *Jordan,* the parties entered a contract that contained the following provision: "The said parties of the second part hereby agree and warrant ... [that] in executing this contract they are not relying upon any representation made by the party of the first part, or by any agent or servant thereof, and explicitly waive any claim on that account." The court in *Jordan* found:

> [I]t is difficult to conceive that such a clause could ever be suggested by a party to a contract unless there was in his own mind at least a lingering doubt as to the honesty and integrity of his conduct. I assume that there is no authority that we are required to follow in support of the proposition that a party who has perpetrated a fraud upon his neighbor may, nevertheless, contract with him in the very instrument by means of which it was perpetrated, for immunity against its consequences, close his mouth from complaining of it and bind him never to seek redress. Public policy and morality are both ignored if such an agreement can be given effect in a court of justice. The maxim that fraud vitiates every transaction would no longer be the rule but the exception.

*Brown* 42 So.2d at 214 (quoting *Jordan,* 178 N.W. at 548).

Having reviewed the pleadings and the above referenced authorities, the Court cannot conclude, as a matter of law, that Plaintiffs' fraudulent inducement claim has been waived notwithstanding the express terms of the Agreement. Accordingly, the Court finds Ford is not entitled to summary judgment on this argument.

## B. Res Judicata

■■■ In its Motion for Summary Judgment, Ford next argues that the claim(s) alleged in *Bogy II* are barred by the final judgment entered in *Bogy I* on the grounds of res judicata. Under Mississippi law, two requirements must be satisfied for res judicata to apply. First, the following four identities must exist: "(1) identity of the subject matter of the action; (2) identity of the cause of action; (3) identity of the parties to the cause of action; and (4) identity of the quality or character of a person against whom the claim is made." *EMC Mortgage Corp. v. Carmichael,* 17 So.3d 1087, 1090 (Miss.2009). Second, it must be shown that the "prior judgment [was] a final judgment that was adjudicated on the merits." *Id.*

■■■ The Court finds Ford has failed to show that an identity of subject matter exists between *Bogy I* and *Bogy II.* Specifically, the claims against Ford in *Bogy I* arose, in part, because of the allegedly defective design/manufacture of the tires on the Ford vehicle involved in the underlying accident. The basis for the lawsuit against Ford in *Bogy II* is the fraud that was allegedly perpetrated, and on which Bogy allegedly relied, prior to her having executed the Agreement by which *Bogy I* was settled. As the subject matter in *Bogy I* (strict liability) and the subject matter in *Bogy II* (fraud in the inducement) differ,[1] the Court finds Ford is not entitled to summary judgment on the grounds of res judicata.

## C. Reliance

■■■ The third argument raised by Ford in support of its Motion for Summary

---

1. Based on these differences, Ford has likewise failed to show an "identity of the cause of action" between *Bogy I* and *Bogy II.* *See e.g. Carmichael,* 17 So.3d at 1090 (explaining that the identity of the cause of action requirement for the purposes of res judicata is "is the identity of the *underlying facts and circumstances* upon which a claim has been brought.")

Judgment is that Plaintiffs cannot meet their burden of showing reliance as is necessary to prove fraud. Under Mississippi law, to prove a claim of fraud, a plaintiff must prove the following elements: "(1) a representation, (2) its falsity, (3) its materiality, (4) the speaker's knowledge of its falsity or ignorance of its truth, (5) his intent that it should be acted on by the hearer and in the manner reasonably contemplated, (6) the hearer's ignorance of its falsity, (7) his reliance on its truth, (8) his right to rely thereon, and (9) his consequent and proximate injury." *Koury v. Ready*, 911 So.2d 441, 445 (Miss.2005) (citing *Mabus v. St. James Episcopal Church*, 884 So.2d 747, 762 (Miss.2004)). Each of these elements must be proven by clear and convincing evidence. *See In re Estate of Law*, 869 So.2d 1027, 1033 (Miss.2004).

On this issue, Ford argues that Plaintiffs cannot prove reliance because, under the terms of the Agreement by which *Bogy I* was settled, they expressly acknowledged that no representations had been made by which they were induced to enter the Agreement and, further, that they expressly agreed that the "facts or law [pertaining to the lawsuit] may be other than what Plaintiffs believe." *See* Mot. for Ruling, 21 (citing Agreement at ¶¶ 11.0 and 1.5, respectively). As discussed above at Section B, however, under Mississippi law, these provisions do not, in and of themselves, vitiate a claim of fraudulent misrepresentation and/or inducement.

Next, Ford argues that Plaintiffs cannot prove fraud because Bogy admitted that she did not believe all of the discovery responses that had been given in *Bogy I*, and she knew that her own expert witness(es) had disagreed with those responses. According to Ford, this testimony shows that Bogy could not have relied upon—as truth—any of the allegedly fraudulent discovery responses in *Bogy I* when entering the Agreement. *See* Mot.

for Ruling, 22 (citing Mot. Ex. 4 (Bogy Dep.) at 29–32, 36). In response, Bogy argues that there exists a genuine issue of material fact with regard to whether she reasonably relied on the subject discovery responses when entering the Agreement. In support of this argument Bogy cites to the following excerpts from her deposition:

Q. What information do you have that shows that any of those responses were . . . misrepresentations?

. . .

A. Just a growing belief as different cases unfolded in the United States and in other countries that led me to believe my first—it added to my belief that information was either held back or misrepresented as a cover-up for a negligent product.

Q. And you held that belief—did you hold that belief before May of 1999?

A. That there was withholding or negligen[ce]?

Q. Yes.

A. Not necessarily, no. I just . . . felt that we asked for information they gave us what they had. All of it—and I had no way of knowing for sure that they may have withheld some information or had some reason to do so.

. . .

Q. Did you review Firestone's discovery responses in the underlying litigation?

A. Yes.

Q. Did you believe when you read those responses, Firestone's responses?

. . .

Q. I want to know what you believed before May of 1999.

A. Well I believed that we asked for information and that we would trust

them to tell the truth to disclose the information asked, just as we did the same.

. . .

Q. Before May of 1999 when you reviewed Firestone's discovery responses, did you believe that?

A. Well, I thought the tire did separate and—but the information they revealed when asked, I thought they revealed everything that they had available, all the information on any previous cases, any studies that had been done on the tires.

. . .

Q. I'd like for you to tell us what the—if you can, the driving force was behind your settlement of the case, the first case back in May of 1999.

. . .

A. Well, we presented information asked of us; Ford and Firestone did the same. And with the advice of our lawyers, the children and I decided that that would probably be the best. And so we came to that decision at that point.

. . .

Q. And because you can't identify—well, if you can't identify the specific representation, can you determine its falsity if you can't identify it specifically?

A. At the time we settled, I didn't know any falsity existed.

*See* Resp., 9–10 (citing Bogy Dep. at pages 44, 45–46, 55–56, 98).

Having reviewed the pleadings, the Court finds that Plaintiffs have presented sufficient evidence to show that there exists a genuine issue of material fact with regard to whether Bogy knew of the alleged falsity of the subject discovery responses at the time the Agreement was entered, and whether she reasonably relied on those responses in conjunction with entering the Agreement. Accordingly, the Court finds Ford is not entitled to summary judgment on this grounds.

### D. Failure to Promptly Act

■ The final argument raised by Ford is that it is entitled to summary judgment because Plaintiffs failed to present her fraud claim in a reasonable time after discovering the alleged fraud. In support of this argument, Ford cites *Whittington v. H.T. Cottam Co.*, 158 Miss. 847, 130 So. 745 (1930), for the following:

> If a party defrauded desires to disaffirm a contract procured by fraud, he must do so with reasonable dispatch after discovery of the fraud. He must make his election, and this election must be made unreservedly. Knowing the facts, he cannot deal with the subject-matter of the contract and afterwards rescind it. The election is with him. He may affirm or disaffirm the contract, but he cannot do both. If he has full opportunity to learn all the facts and the law applicable thereto, and fails, within a reasonable time, to rescind the contract, he is bound by it. He must exercise that degree of diligence which may be fairly expected from a reasonable person.

*Id.* at 748. According to Ford, as Plaintiffs waited more than six months between the time they allegedly determined they had been defrauded and the date on which they filed the lawsuit, their claims are time-barred.

■ The Court finds the argument raised by Ford is misplaced because Plaintiffs do not seek to disaffirm the Agreement based on the alleged fraudulent inducement. Instead, Plaintiffs have elected to abide by the Agreement and seek damages arising from the alleged fraud. Under long-standing Mississippi law, their right to do so is not prejudiced by delay. *See e.g. Estell v. Myers*, 54 Miss. 174

(Miss.1876) (explaining that in cases of fraudulent inducement a party may decide to rescind or affirm the contract. If he seeks rescission, "he must proceed presently, within a reasonable time after he discovers that the representations are false." If, however, the party decides to abide by the contract, "he may sue for the deceit; or he may allege his damages in recoupment of the purchase-money [and] his rights [are not] prejudiced by delay."). Accordingly, the Court finds that Ford is not entitled to summary judgment on this claim.

### IV. Conclusion

In sum, having reviewed the pleadings and the applicable law, the Court finds that the Motion of Ford for Summary Judgment on the issues that had not previously been decided by the Court is not well taken and will be denied.

IT IS THEREFORE ORDERED that the Supplemental Motion of Ford Motor Company for Summary Judgment [Docket No. 49] is hereby denied.

IT IS FURTHER ORDERED that the stay previously entered in this case is hereby lifted, and Clerk of Court is directed to return this case to the active docket of the Court.

IT IS FURTHER ORDERED that the Motion to Lift Stay [Docket Nos. 64 and 67] are hereby dismissed as moot.

IT IS FURTHER ORDERED that a telephonic conference will be scheduled for the purpose of discussing the management of this case. The attorneys for the parties are hereby directed to contact Nijah Lewis, Courtroom Deputy for Judge Barbour, by conference telephone call during the week of November 14th, for the purpose of arranging a time for a telephonic conference with the undersigned.